ANNIE T. CURNEN, Appellant, *against* THE MAYOR, AL-
DERMEN AND COMMONALTY OF THE CITY OF NEW YORK
*et. al.* Respondents.

(Decided March 4th, 1878.)

Where, by a mistake, the amount of an assessment is paid to the collector of arrears
of assessments in New York City, and an entry made on his books to the effect
that the assessment on a certain lot is paid, this does not discharge the lien of the
assessment nor prevent it (after the mistake has been rectified and the money
refunded) from being enforced even against the property in the hands of a per-
son who purchased it upon the faith of such entry.

The only way in which a purchaser of real estate can protect himself from the liens
of assessment is that provided by the act of 1853 (L. 1853, c. 579, § 16), by which
the certificate of the clerk of arrears, countersigned by the comptroller, is made
conclusive evidence.  Such certificate was intended by the legislature to be, and
is, the only entry or declaration made by the officers of the corporation of the
city of New York in relation to such matter which will operate as an estoppel
upon it.

APPEAL from a judgment of this court, entered upon the
report of George Ticknor Curtis, Esq., referee, to whom it
had been referred to hear and determine the issues.

The action was brought against the mayor, &c., of New
York City and Frederick and Theodore Killian, to restrain
the corporation from selling the plaintiff's land for the pay-
ment of certain assessments therein ; to vacate and set aside
a certain decree in a suit by the Killians against the corpora-
tion, and to have certain assessments on the plaintiff's land
cancelled and discharged of record.  The corporation only
appeared in the action.

The facts are fully stated in the opinion.

*W. H. McDougall*, for appellant.

*D. J. Dean*, for respondent.

ROBINSON, J.—In July and August, 1872, two assessments

were imposed upon premises designated as lot No. 50, in block 101 on assessment maps, on No. 340 West 55th street in this city, one for $148 for the widening of Broadway and the other for $7 20 for the opening of Riverside Park, which, having been duly confirmed by the Board of Revision and Correction of Assessments, had become a lien or charge on said lot.

In March, 1873, Killian Brothers (Frederick and Theodore), intending to pay liens on adjacent property belonging to them, by mistake paid these assessments on No. 340 West 55th street to the collector of arrears of assessments, upon some misinformation from a clerk in the office of the said collector, and thereupon an entry was made in reference to and opposite to the entries of said assessments of the words "paid by Killian Bros." In November, 1873, the plaintiff became the purchaser of this property, and preparatory thereto caused a search to be made by a searcher, Mr. P. C. Kingsland, for arrears of assessments upon the property, who, finding the said entries made opposite said assessments in the books of the collector of assessments reported to plaintiff that the property was free from other liens, by way of taxes and assessments other than such as were designated by him, not including either of those in question.

Whereupon plaintiff purchased the property and paid the full consideration money without any regard to these assessments. In 1876 the Killian Brothers instituted an action against the defendant to recover the sums they had so paid by mistake, and obtained judgment therefor; and by virtue of the judgment in that action and special directions contained therein, an entry was made in the said books of the said collector opposite the statement therein of these assessments, "lien restored."

Were these transactions between *private parties* some considerations might possibly be invoked or urged which are not due to them under the circumstances of the present case. They were not matters of private concern. The corporation of this city in the opening of public streets are acting "*publici juris*," and principles of private rights prevailing as

to transactions between private individuals do not fully apply.

The whole matters of opening and widening streets, establishing parks, and other matters of public concern, are conferred upon the corporation by statutes as mere executors of the public will, and its officers act in obedience to such legislative enactments for the *public benefit*, and not particularly for any private or local interests, or in respect to their proprietary rights. (Dillon Mun. Cor. § 772; *Maxmilian* v. *The Mayor, &c., of New York*, 62 N. Y. 164; *Tone* v. *The Mayor, &c., of New York*, 6 Daly 343, affirmed in Court of Appeals June 12, 1877; 5 N. Y. Weekly Dig. 66.) They are not responsible (beyond what the law prescribes) for acts done in the *due* execution of such powers, nor for any collateral obligations they may assume in respect to them. (*Brick Presby. Ch.* v. *The Mayor, &c., of N. Y.*, 5 Cow. 538.) No entry in the books of the corporation relating to such a transaction of what has *lawfully* transpired can be regarded by way of an admission of what has occurred otherwise than in due course of the execution of their powers as conferred by statute. Being solely the administrators of such a public trust, their agents could not, without express authority from the corporate body, make any entry in the books of the corporation in deviation or derogation of the powers and duties thus conferred by statute. The entry of payment of the assessment in question was in no respect that of a private person of a debt due him, but, beyond which there might be matter of question between them, or such as was merely of private right. It had relation solely to that which concerned the public.

Payment thus received from the Killians was subject to every consideration of equitable or legal cognizance, as one made by mistake. The duty of the corporation was simply to collect the assessments, and the Court of Appeals, in *Mayer* v. *The Mayor, &c., of New York* (63 N. Y. 455), say, "If an entry of payment is made, no reason is shown why, upon discovery of the mistake, it might not have been cancelled and the collection enforced against the person liable to pay the

assessment, or upon his default by a sale of the land upon, and in respect to which the assessment is made." It was under that principle that in the action brought by the Killians the court adjudged, that the money so paid by them was for want of an intelligent agreement between payers and payee, and made by mistake of the former, ineffectual as *a payment* discharging the lien, but " *ex æquo et bono* " ought to be returned to the Killians. The payment having been so made by mistake, and such judgment having been rendered between the parties to the transaction without the intervention of the plaintiff, it remains but to be considered how far the defendants can be made liable upon the alleged claim of the plaintiff that the lien of those assessments was in fact thereby extinguished and incapable of restoration, or what were her rights as *bona fide* purchaser of the property. The judgment was that the assessments never had been paid, and therefore no *restoration* of the lien could be predicated upon the transaction. The plaintiff shows no privity with the Killians by virtue of which such payment could be asserted as having been made by them of right or obligation, and her present action can only be sustained upon some application of the principle of *estoppel*. In this respect it is wanting in every particular or element upon which such right could be predicated.

So far as the corporation are concerned, they were acting through their collector as mere public agents. They were liable to refund moneys paid them through an unjust exaction, as also for that which was paid by mistake; and, as was held in *Mayer* v. *The Mayor, &c., of N. Y.* (*supra*), money so paid by mistake did not operate as a payment. They in the present case simply received from the Killian brothers the money offered them in payment of these assessments, and a corresponding note or memorandum of the fact was made on their books. Any equitable considerations growing out of such entry was not chargeable to any misfeasance of theirs. No knowledge or notice of the relations of the Killians or of the plaintiff to the property was communicated to them otherwise than through the asserted interest of the former to pay

the assessments and discharge their lien. No obligation rested upon them to investigate the remote relations of the parties in the property, nor can any negligence be imputed to them in accepting the sum tendered by the Killians and making a corresponding entry of the payment. The *act of entry* in the books of the collector of assessments of such payment by "Killian Brothers" was but their private acknowledgment and memorandum of the fact. It, in itself, neither had in the circumstances of the case nor in any estimate of its character effected a discharge of the lien ; it was not made with any view to influence the conduct of any other person ; it but truly disclosed what had actually occurred, and instead of communicating any misinformation rather advised any person interested in and desirous of investigating into the subject of the persons who made the payment, and afforded the means of ascertaining in what right, in what connection with the title, or upon what consideration such payment had been made by the Killian brothers, so as to relieve the payment from possibility of recall, or as made in some right that would attach the continuing lien for such payment.

The legislature, out of regard to the interests of *bona fide* purchasers, and to afford them ample immunity from assessments remaining unpaid "twelve months or over," have, by the act of 1853 (chap. 579, sec. 16, Davies' Laws, N. Y. City, 1149), provided for such a case as the plaintiff has presented, by means of a certificate of the clerk of arrears, and his receipt for such assessments (if any) unpaid to be countersigned by the comptroller, which is thereby made "*conclusive evidence*" that there was no other such lien by way of assessment, and it forever *freed the lot* from any other such liens due thirteen months or over prior to such receipt (as were these in question). Had the plaintiff taken this precaution of obtaining the receipt for payment of the other assessment ("for paving 55th street, $130 60") she would have availed herself of the precaution the law pointed out, and which ("*expressio unius est exclusio alterius*") the legislature has fairly indicated as the only means of concluding the defendants from such a claim as is presented in this action. From

these considerations the judgment should be affirmed because, first : The defendants acted strictly in the line of their public duty, and are in no respects liable for injuries occurring to others through the acts of their officers while complying with the law, without misfeasance, and none has occurred through any illegal act of theirs, authorized or sanctioned by the corporation. Second: No principle of estoppel applies to acts so done in performance of a public duty. Third : No act was done by defendants or their authorized agents with notice or knowledge of the intended action of the plaintiff, or with any intention to promote or influence the conduct of the plaintiff. Fourth : The entry made in the records of the collector of arrears of taxes was true, so far as defendants were concerned, until its revocation by some equitable right asserted and established "*ex æquo et bono.*" Fifth : Such entry fully advised the plaintiff by whom such payment was made, and afforded her the means of ascertaining in what right, or upon what consideration, such payment was made by an apparent stranger to the title. Sixth: The law afforded her, under the provisions of the act of 1853, ample means of protection from such a lien. Seventh : They were exclusive, as the mode of estopping or debarring the defendants from asserting the continued existence of such liens, notwithstanding any irregular acts of their officers by which through receipts, or entries, acknowledgments or other "*prima facie*" proof of payment and satisfaction might be established; and, lastly (but a minor point), plaintiff fails to prove (although she so asserts) that she acted in paying the entire purchase money, without deducting or providing for these assessments, under *implicit* and sole reliance on the entry in the collector's books.

The judgment should be affirmed.

CHARLES P. DALY, Ch. J., and LARREMORE, J., concurred.

Judgment affirmed.