ALEXANDER E. MACDONALD, PLAINTIFF, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, DEFENDANTS.

*Contract between a city and one of its officers — who is not an "officer" within the meaning of the prohibition — 1882, chap. 410, sec. 59.*

The plaintiff had been appointed by the commissioners of charities and corrections the medical superintendent of the Asylum for the Insane at Ward's Island, and received as such superintendent a salary, payable out of the appropriations for the salaries of the officers and employes of the department of charities and corrections. At the request of the district attorney of New York he examined a person about to be tried upon an indictment for a felony to ascertain her mental condition, and subsequently appeared upon the trial of the indictment and was examined by the district attorney. His duties at the asylum, where he resided, were those of general superintendent, and it was no part of his duties to render the services above mentioned to the district attorney.

In this action brought to recover the sum, certified by the district attorney to be the reasonable value of the services, from the city of New York, which had collected by tax, and held, a fund for such purposes:

*Held,* that the plaintiff was entitled to recover; that he was not an "officer of the corporation" within the meaning of section 59 of chapter 410 of 1882, prohibiting such officers from being directly or indirectly interested in the performance of any contract, work or business, the expense of which was to be paid from the city treasury.

CONTROVERSY submitted upon an agreed statement of facts, under section 1279 of the Code of Civil Procedure.

*John E. Bowers,* for the plaintiff.

*George P. Andrews,* for the defendants.

DAVIS, P. J.:

The plaintiff in this case is a physician and a distinguished specialist in diseases of the brain. The district attorney of the city and county of New York being about to try an indictment for felony, in which the defense of insanity was interposed, employed Dr. Macdonald to make a professional examination of the party indicted, to ascertain her mental condition with a view of being a witness upon the trial. The doctor made such examination and qualified himself to become a witness, and at the request of the district

attorney attended the court and was examined upon the trial. His reasonable compensation for such services was certified by the district attorney to be $100; and it is conceded in the case made that that amount was a fair and reasonable charge. The district attorney promised to pay that sum for the service rendered. The money necessary to pay such expenses by the district attorney is raised and collected annually by tax, and there is now a fund in the hands of the defendant, set apart for that purpose, more than sufficient to pay the plaintiff's claim. At the time of his employment by the district attorney as above stated, and during the period of the services rendered by him. Dr. Macdonald was the medical superintendent of the Asylum for the Insane at Ward's Island, appointed by the commissioners of charities and corrections, and receiving a salary as such superintendent payable out of the appropriation for salaries of the officers and employes of the department of charities and corrections. His duties were the general superintendence of the asylum, where he resided, and it was no part of such duties to render professional services of the kind for which this claim is made, and the district attorney had no more right to call upon him than upon any other physician. The person indicted was not an inmate of the asylum for the insane, nor in anywise under the charge of the department of charities and corrections.

The question submitted is whether Dr. Macdonald is entitled to receive compensation for his services out of the fund above mentioned. The objection made to its payment is based upon section 59 of the consolidation act of 1882 (chap. 410.) That section is as follows: "No member of the common council, head of department, chief of bureau, deputy thereof or clerk therein, or other officer of the corporation, shall be or become directly or indirectly, interested in, or in the performance of any contract, work or business, or the sale of any article, the expense, price or consideration of which is payable from the city treasury."

It is objected by defendant that this section prohibited the performance by Dr. Macdonald of the services as above stated, because he was then holding the position of medical superintendent of the Asylum for the Insane, and that therefore no compensation for such services could be paid. It is contended that the case is covered by the phrase in the section "*or other officer of the corporation.*" This

raises the question whether the medical superintendent of the New York City Asylum for the Insane, is an officer of the city corporation. In *Maxmilian* v. *The Mayor* (62 N. Y., 160) it was held that the subordinates appointed by the commissioners of charities and corrections were not agents or servants of the city, for whose negligence the city is liable. This was placed upon the ground that the commissioners of charities and corrections are public officers who discharge duties for the general public benefit imposed upon them by the legislature; and the fact that the legislature have conferred the power of appointing such commissioners upon officers of the city does not change their relation or character of public officers so as to make the city responsible for their acts in the performance of their official duties. They are likened to the overseers of the poor of a town who are public officers though getting their right of office from a circumscribed locality; and the court says: " The acts which they may do are to be done in their capacity as public officers in the discharge of duties laid upon them by the law for the public benefit, and far removed from acts done by city or town, in its municipal character, in the management of its property for its own profit or advantage."

This case we think very clearly establishes that the plaintiff, as the appointee of the commissioners of charities and corrections, is not an officer of the corporation within the meaning of section 59 of the consolidation act of 1882. That section is not to be broadly construed, because its effect is to restrict the exercise of private rights by restraining a class of persons from becoming interested in the performance of contracts, work, or business, or the sale of articles in which, by general law, all persons may engage. It does not therefore apply to any one who is not within the description of persons included in the prohibition. The service rendered by Dr. Macdonald was in no sense within the range of duties which he owed to his employers, and there seems to be no reason why the district attorney, in seeking expert witnesses in a case involving a question of insanity, should be prevented from securing the services of one whose constant experience in connection with the insane, would naturally render him a competent and desirable witness. It is not necessary, we think, to examine any other of the authorities bearing more or less directly upon this question.

The counsel for the defendant relies upon *Rowland* v. *The Mayor* (83 N. Y., 372). In that case the question was whether the supervisors of the county of New York had authority to increase the plaintiff's salary. The plaintiff had been appointed an attendant of the Supreme Court by the board of supervisors of the county of New York under the provisions of section 28 of the Code of Procedure, and his salary had been fixed at $1,200. The legislature, by section 3 of chapter 382 of the Laws of 1870, prohibited the board of supervisors from increasing the salaries " of those now in office or their successors." The board had, by resolution, increased the salary of attendants of the Supreme Court from $1,200 to $1,500, and the question was whether such increase was forbidden by the act referred to. That question depended upon whether or not an attendant of the Supreme Court is a " person now in office" within the meaning of the act then under consideration. The Court of Appeals held that such attendant was an officer within the meaning of the act, thereby reversing, by distinguishing, several of its previous decisions (*Holley* v. *The Mayor*, 59 N. Y., 166 ; *Brennan* v. *Mayor*, 62 id., 365), in which some of the judges of that court wholly misapprehended the character of the attendants which the statute authorized to be appointed for the Supreme Court and held them to be mere *menial servants.* While *Rowland* v. *Mayor* may be authority for holding that the medical superintendent is an officer, it is by no means an authority for holding that he is an officer of the city corporation. The case does not conflict with that of Maximilian, which establishes that his position is that of an officer of and under the commissioners of charities and corrections.

It may also be said, although not necessary to the decision of the case, that the district attorney is an officer of the county of New York, and not of the city corporation ; that the services rendered by Dr. Macdonald were for the county and not for the city, and that the funds appropriated for the payment of such services is appropriated to extinguish county and not city liabilities. Legally speaking the payment is not made out of the city treasury, and for that reason also the inhibition of the act does not extend to this case. It is sufficient, however, to rest our decision upon the primary question that the office is not a corporate one within the meaning of the section under consideration.

No other point or objection being made, and this being not an action against the city, but a case submitted for the determination of the simple question of the right to receive payment out of the fund, we think it our duty to direct judgment that the plaintiff is entitled to such payment, with costs.

Brady and Daniels, JJ., concurred.

Judgment ordered for plaintiff, with costs.