Daniels, J.
The plaintiffs were engaged in the construction of a sewer from a point at tide water to One Hundred and Sixty-fifth street, in the Twenty third ward of the city of New York, under a contract made and executed in October, 1870. The work was commenced in the following month and progressed until the summer of 1873, when it was suspended in part in consequence of an order made by the board of health on the 20th of June, 1878, and in part by orders of the inspector and engineer in charge of. the work. These several orders related to but two points-traversed by the sewer. There were, it is true, other orders of a more informal character interfering with the progress of the work at other points, but they were temporary in their effect and included only such directions as in the judgment of the inspector and engineer it was necessary to-give for the proper performance of the work. The two-points to which the more formal orders related included, only the crossing by the sewer of One Hundred and Thirty-eighth street and One Hundred and Fifty-sixth street. It-was about 10,000 feet in length and at these points intersected a stream known as Mill brook. The sewer them was to be constructed through the bed of the brook, interrupting for the time the flowage and discharge of its water. This brook drained a territory of about twenty-five acres, including the larger part of the village of Melrose. Sewerage was discharged into it, polluting its waters, and a prominent purpose of the sewer was to receive and discharge this water. By the interruption of the stream the-water overflowed low ground in the vicinity of One Hundred and Fifty-sixth street, and as it was inclined to putridity, it was believed by the health department of the-city that its detention in that manner would be productive of sickness and disease in the neighborhood. For that-reason, at a meeting of the board of the "health department-of the city, on the 20th of June, 1873, an order was made-directing the removal of all obstructions in the channel of the water course at or near the point of its intersection with One Hundred and Fifty-sixth street. This order was- *249 regularly made under section 14 of chapter 74 of the Laws-of 1866, which, while it related in its language to the-Metropolitan Board of Health, it was applied and made applicable to this board of health by section 12 of chapter 757 of the Laws of 1873.
The order was served upon the plaintiffs accompanied by a notice that if within three days after its service the same was not complied with, or on due application suspended or modified, that then the board in its discretion might make an order directing the execution of the order made, at the expense of the plaintiffs, and for which omission a penalty would be incurred by them. The order was not immediately complied with by the plaintiffs, and criminal proceedings were commenced against them for disobeying-its directions, and that resulted in the suspension of so much of the work of constructing the sewer as included the crossing at One Hundred and Fifty-sixth street.
That the work at this point was suspended because of' this order and the proceedings following it, was quite-clearly proven on the trial. The witness, John McQuade, testified that the board of health interfered with the work, while it was in progress. And the plaintiffs’ witness, Charles Jones, further testified that, “at one time the board of health stopped our work in the summer time.” * * * “I think that we stopped there until fall, from sometime in June until cool weather in the fall. That was-the time when the order came from the board of health, and that is the stopping I referred to as at One Hundred and Fifty-sixth street.”
The plaintiffs’ witness Quinn, also, testified, “There were interruptions of the work in regard to several things, but no direct interruptions until May, 1873, the board of health ordered it.”
He was probably mistaken as to the tune, for the reason that the order of the board of health was not made until the twentieth day of June, and he added that, “the order of stoppage from the board of health named a specific point, 156th street.” “ The actual intereference that compelled the contractor to stop came in July. It commenced May twenty-eighth, you might say the work was stopped May twenty-eighth. The order of the board of health stopped the work.” * * * “ The work of constructing the sewer therefore necessarily interfered with the flow of the water, and as a matter of fact backed the water up and caused it toaccummulate in a pond when the stoppage of the work was compelled by the order, which came to the contractors from the board of health.”
This evidence was not contradicted upon the trial, and it *250 must be assumed, therefore, to properly describe the cause to which the suspension of the work at One Hundred and Fifty-sixth street is to be attributed. And this suspension and the delay and expense necessarily produced by it seems to have entered into the allowance made to the plaintiffs by the referee. The evidence of the proceedings of the board of health was given as a part of the plaintiffs’ case, and against the objection of the defendant’s counsel. And they are contained and set forth in the report of the referee, for no other apparent reason than to establish the fact that the plaintiffs were in the performance of the work, for the enhanced expense of which, as it was afterwards performed, the defendant was held to be liable.
It has been urged in support of the judgment that no part of it was recovered for the delay produced by this interference of the board of health, but that the recovery was placed wholly upon the interference of the agents and servants appointed by the defendant to supervise and direct the work. But this position appears to be incapable of being maintained. For by the evidence of the witnesses the time was aggregated during which the work at these points was interfered with and suspended and the increased expense of the labor and material employed has been stated by them in such a manner as to include the suspension of the work at this point and also at One Hundred and Thirty-eighth street as one entire subject. And in the report of the referee he has aggregated the number of days that were stated to have been required and employed for the completion of the work over and above the time that it would have required if no interruption whatever had taken place. And in this respect he has followed the testimony of the witness Guión, who stated that the work without interruption would have been completed in between three and four hundred days, but as it was done, 735 working days were actually devoted to its performance. The order of the inspector made under the authority of the board of commissioners of the department of public parks in no manner relieved this attribute of the case or created a liability of the defendant, for it was not made until the 6th of July, 1873, which was after the order of the board of health had become obligatory upon the plaintiffs and they had been arrested in criminal proceedings for its disobedience and finally concluded to comply with it. This order of the inspector consequently added no weight or effect to the proceedings of the board of health, for it did not itself in any manner contribute to the suspension of the work. That was done by the order of the board of health according to the testimony of the witnesses already extracted from the case.
*251 The board of health was not subject to the dictation or control of the city authorities. It did not sustain the relation of agent or servant to the defendant, but acted wholly in obedience to the laws of the state defining and delegating its authority and declaring its duties. This was done by the application to this board of chapter 74 of the Laws of 1866, as that was amended by succeding legislation including that of 1873 already referred to. The defendant conse-' quently was not liable for this interference of the board of health, or the suspension of the work at One Hundred and Fifty-sixth street, in consequence of its order. In' making the order and taking the proceedings following it, the board acted in no sense in the way of dependence upon the defendant. It was not subordinated to the defendant, and the board exercised its own judgment, as that was influenced by the circumstances, without reference to the defendant or any of its agents, officers or servants.
For that reason, under the well settled principle applicable to the acts of boards of this description, the defendant was not liable for this interference with the work by which its suspension at this point was secured and continued into the fall of the same year. Ham v. Mayor, 70 N. Y., 459; Mayor v. Bailey 2 Denio, 433; Smith v. City of Rochester, 76 N. Y., 506; Maxmilian v. Mayor, etc., 2 Hun, 263; affirmed, 62 N. Y., 160; Donovan v. Board of Education, 85 id., 117; Morrison v. Lawrence, 98 Mass., 219; Barney v. Lowell, id., 570; Fisher v. Boston, 104 id., 87; N. Y. and Brooklyn Saw Mill Co. v. Brooklyn, 71 N. Y., 580, where the principle is stated to be “that a municipal corporation is not hable for the omission to perform, or for negligence in the performance of a public duty laid upon an independent officer, in which it has no private interest, and from the performance of which it derives no special or corporate benefit, although it is required to elect or appoint such officer, and although the officer was in charge, and the negligence imputed in the use of property owned by the corporation.” Id., 504.
So far, therefore, as the plaintiffs were interrupted in the construction of the sewer at 156th street, by the order and interference of the board of health, the defendant was not responsible for the consequences. It was a lawful interference, for the evidence proved the fact to be, and the plaintiffs conceded it in their communication of the 27th of June, 1873, that the interruption of the flowage of this stream had produced a nuisance. And the board of health proceeded, in strict compliance with the law, in declaring it to be so, and ordered the obstruction to the flowage of the to be removed, which, as a matter of fact, suspended the plaintiff’s work at that point.
But, if the damages resulting from this order were not *252 included in the report, and the judgment entered upon it, the recovery still seems to be erroneous. For by the contract-made for the performance of the work, it was to proceed and be performed under the direction of an engineer and assistants appointed for that purpose by the commissioners of the department of public works. And it was provided and declared in section 5 of the specifications forming a part of the agreement, that all work shall be, in every respect, executed in a thorough and workmanlike manner, and shall be commenced and carried on at such points and in such order of precedence, and at such times and seasons as may, from time to time, be directed by the engineer. And this was ample authority for the board and the engineer and assistants acting under, it to direct the suspension, for the time-being, of the work both at One Hundred and Thirty-eighth street and One Hundred and Fifty-sixth street, which is all that they, in form, attempted to do. For this clause of the-specifications invested them with plenary authority to direct, where the work should be commenced and carried on, and the times and seasons in which it should be done. And they did no more than that by the orders of the twenty-seventh of June and the sixth of July, directing the work at One Hundred and Thirty-eighth street to be stopped, until further orders were given, and at One Hundred^ and Fifty-sixth street until further instructions were received, and the heat of the summer season was over.
The order of the engineer himself made on the 27th of June, 1873, was no broader in its effect, as it extended no further than to direct the work at One hundred and thirty-eighth street, between the two ends of the sewer on either side of that street, not to be connected until such time as the department should afterwards specify. In giving these orders the officers acted under the authority of the department. And that by section 65 of the specifications provided in the most general language that “the prosecution of the work may be suspended at such times, and for such periods as the board of commissioners of the department of public works may from time to time determine.” It. was also declared by sub. N. of sec. 67 of the specifications, that Sundays, holidays and such other days on which the prosecution of the whole of the work, in accordance with the provisions of this agreement, as in consequence of the weather necessarily suspend, should b.e excepted from, the two hundred days in which the plaintiffs agreed to complete it. And a cause of the suspension of the work at these points was the existence of the summer season of the year, and of its effect upon this stagnant water. And that, the plaintiffs were willing to acquiesce in that suspension was stated by them in sub-division 5 of their communica *253 tion of the 27th of June, 1873. For it was proposed in it, as the disturbing of the soil in such a locality during the summer is likely to prove a nuisance, that the commissioners might direct that the work be suspended -until October, or until the warm weather was over. There was no evidence in the case that either the commissioners, or the engineer, or the. inspector acted capriciously or otherwise than according to their best judgment under the circumstances. But the evidence of the witnesses tends very directly to establish the fact that in the directions they gave they had reasons which were deemed sufficient not only to justify, but to require such directions. And as they were authorized by these provisions in the contract to exercise the authority which they did, and suspend the operation of the work at these particular points, the city cannot be held liable for the result to the plaintiffs of that suspension. It was provided for and contemplated that interference and suspensions of the work might take place in the progress of its performance. And as the power to suspend it was reserved by the agreement, there was no violation of the contract in exercising it for which the defendant could be held legally liable in the way of damages.
The suspension for which substantial complaint was made on behalf of the plaintiffs occurred only at these two points. They were left at liberty to go on with the work wherever it was in an incomplete condition, upon the entire residue of the line of the sewer. And it was stated by one of their witnesses that the work remaining to be done, excluding these two points, might be thoroughly put in progress within a graduated period of not exceeding two months, and that at the end of that time they would have been able to have employed all the men they had upon the work when it was suspended at the crossing of the creek over these two streets. Added to that detention what after-wards remained to be done was to change the apparatus and machinery in use at these points to other places on the line of the sewer, where the plaintiffs were at full liberty to proceed with the execution of the agreement and the progress of the work. But without attributing special importance to these circumstances, it is sufficient for this part of the case to say that what was done in the way of suspending the work at these two streets by the officers of the defendants furnished the plaintiffs no legal ground of complaint upon which a recovery of damages for increased expenditures could be sustained against the defendant. It was proposed by a resolution of the department that the plaintiffs should be at liberty when sections of the sewer should be completed, permitting that to be done, and after their acceptance, to turn the water of Mill Brook into such *254 sections. But no action on their part was taken under this, resolution, and it accordingly is not entitled to any special-prominence in the disposition of the case.
But if the plaintiffs could recover for this interference, the-amount allowed seems to have been excessive. It included $17,442.25 paid for labor, and $13,430.15 for materials— more than it is stated would have been expended if the plaintiffs had not been prevented during the summer season to go on and complete these small sections of the sewer crossings in the bed of the stream at One hundred and thirty-eighth street and One hundred and fifty-sixth street. That is all for which in any view the plaintiffs could claim indemnity. And that their expenditures on that account aggregated these large amounts does not seem to be consistent with the limited extent of the interference complained of, or with the evidence given by the plaintiff’s witnesses, or the probabilities of the case itself.
The judgment should be reversed and a new trial ordered, with costs to the appellants to abide the event.
Van Brunt, P. J., and Brady, J., concur.