JOHN O'BRIEN AND ANOTHER, APPELLANTS, v. THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, RESPONDENTS.

*Municipal corporation — construction of the new aqueduct for New York city — power of a chief engineer to vary the contracts made under the act, chapter 490 of 1883 — liability of the city, limited strictly to the contract.*

Chapter 490 of the Laws of 1883, relative to the new aqueduct for the city of New York, which gave all powers in the matter to certain aqueduct commissioners, directed the commissioner of public works to prepare and submit to the aqueduct commissioners forms for the contract and specifications, which were to be approved by the commissioners, who were authorized to intrust the supervision

and direction of the work to the engineers and other subordinates of the department of public works, so far as the commissioners should direct.

The act provided that the city should in no event be subject to any greater liability than was expressed in the contracts made by the commissioners; that where there was an expenditure of over one thousand dollars, a contract, pursuant to the provisions of the act, must be entered into, and that work not involving the expenditure of over five thousand dollars might be done without a contract if the commissioners certified that in their opinion it was for the public interest that such work should be so done, and stated their reasons therefor.

That no claim for extra work should be made, unless, before the performance of such extra work, the said commissioners should have first authorized, in writing, such extra work, and should have, also, first certified, in writing, for each and every order that it is, in their opinion, for the public interest that such extra work should be done, stating in such certificate their reasons therefor; nor unless, before the performance of such extra work, the price or prices to be paid therefor should likewise first have been agreed upon, in writing, between said commissioners and the contractor; and done in obedience to the written order of the chief engineer; and that the aggregate price should not exceed the sum of $5,000 on any one order.

The commissioners, pursuant to this statute, entered into a contract with the firm of O'Brien & Clark, which provided that the final certificate of the chief engineer as to the amount due should conclude the contractors.

Upon the trial of an action against the city for an amount alleged to be due and unpaid to the contractors, it appeared that the chief engineer had made statements to the contractors, relative to changes desired, intimating that certain of the work not within the contract would be paid for.

*Held,* that as the legislature had taken the work out of the hands of the city and put it into the control of certain commissioners, any liability of the city must be one strictly within the words of the statute.

That as the plaintiffs did not show for the amounts over one thousand dollars any contracts in writing or certificates, their claims therefor were not enforceable, as being for extra work, and must be deemed to be made under the contract.

That, although the contract contemplated that modifications should be made from time to time by the chief engineer, he could not bind the city to pay for such changes, unless by his order therefor in writing, pursuant to the contract.

That, even if these requirements had been complied with, the liability of the city could not be extended beyond the final certificate of the chief engineer, which by the contract was to be conclusive.

That where the size of the cross-section of the aqueduct was apparent from the plans and specifications, there could be no recovery for excavation outside of the dimensions of the cross-section, even though one of the engineers had verbally directed the excavation of a larger cross-section.

*Semble,* that it was the duty of the contractors to have presented their claims for extra work to the chief engineer before he made his final certificate in order that he might have an opportunity to consider such claims.

That the city of New York was not liable to the contractors for the mistakes of engineers in giving erroneous lines and levels, even though those who gave the instructions were the agents, servants or officers of the city.

That, in the execution of the work, the engineers and other employees were the servants of the aqueduct commissioners, a body created by statute and independent of the city.

Appeal by the plaintiffs, John O'Brien and Heman Clark, from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 2d day of November, 1891, upon a verdict in their favor for $20,236.77 and costs, directed by the court after a trial at the New York Circuit before the court and a jury.

*E. T. Lovatt,* for the appellants.

*James C. Carter, Elihu Root, Austen G Fox* and *Wallace Macfarlane,* for the respondents.

Van Brunt, P. J.:

On the 1st of June, 1883, the legislature passed an act (being chapter 490 of the Laws of 1883), entitled "An act to provide new reservoirs, dams, and a new aqueduct with the appurtenances thereto, for the purpose of supplying the city of New York with an increased supply of pure and wholesome water." By the first section of this act the mayor, comptroller, commissioner of public works and three citizens were authorized, empowered and directed to carry out the provisions of the act in the manner thereinafter provided, and they were to be known as the aqueduct commissioners. By the second section it was provided that the commissioner of public works should, under the direction of the aqueduct commissioners, as soon as possible after the passage of the act, submit to them a plan or plans for the construction of a new aqueduct or conduit for water; and for the construction of one or more dams or reservoirs to retain such water, and for the construction of the appurtenances thereto. Those plans the aqueduct commissioners might adopt, modify or reject, in whole or in part, and might cause such surveys to be made as they might deem expedient to enable them to act intelligently in the premises; and it was provided that, in case of the rejection of any such plan or plans by the said aqueduct commissioners, the said commissioner of public works should in like manner prepare and submit another

plan or plans, etc.; which course should be continued until a plan or plans covering the entire work contemplated by the act should be approved by the aqueduct commissioners.

The act then provided for the acquisition of the land necessary to carry out the work; and by the twenty-fifth section it was provided that the commissioner of public works should, from time to time as might be necessary, prepare and submit to the aqueduct commissioners, and to the counsel to the corporation, forms of contract and specifications, and bonds for the faithful performance thereof, for the doing of the work and the furnishing of the materials required to be done and furnished by the said approved plan, or for the doing of such parts of such work, and the furnishing of such parts of such materials as might from time to time be required for that purpose; which forms of contracts, specifications and bonds, were to be approved by the aqueduct commissioners, and approved as to form by the counsel to the corporation, and that the said aqueduct commissioners should have the exclusive authority to determine what provisions should be embodied in said contract, in order, so far as might be possible, to save the city from loss, embarrassment and litigation, by reason of any work done or supplies furnished thereunder, which approval should be evidenced by their certificate indorsed thereon, signed by a majority of them; and the approval of the counsel to the corporation was to be evidenced by his certificate to that effect, indorsed in like manner.

By section 26 it was provided that when the form of the contract, with its specifications, and the form of the bond for the faithful performance thereof, should have been approved as above provided, the said commissioners should advertise for sealed bids or proposals for the doing of the work or the furnishing of the materials called for in such approved form of contract; and after the receipt of such bids or proposals, by section 28 it was provided that they should be publicly opened by said aqueduct commissioners, who were empowered to accept that bid or proposal, the acceptance of which would, in their judgment, best secure the performance of the contract; or they might reject any and all such bids.

Section 30 provided that the contracts, when so awarded, were to be executed in triplicate by the contractors on the one part and the aqueduct commissioners, acting for the city of New York, on the

other part; and that the work and materials called for by such contract should be done and furnished under the direction and supervision, and subject to the inspection of said aqueduct commissioners, their engineers, supervisors and inspectors, but such direction, supervision and inspection might be intrusted to the engineers and other subordinates of the department of public works, so far as said commissioners should so direct; but in no event should the city of New York be held in any action or proceeding brought or had under any contract so made to any other or greater liability than that expressed therein, nor be required to pay out or otherwise dispose of any sum of money for the doing of such work or the furnishing of such material greater than is stipulated in said contract, nor otherwise than in strict conformity to the terms thereof.

Section 33 provided that all work thereby authorized to be done, and all materials to be furnished involving an expenditure of over one thousand dollars, should be procured by contract made in the manner required by and pursuant to the provisions of the act. The said commissioners were, however, empowered without contract to cause such surveys to be made and such maps and plans prepared as should, in their opinion, be necessary to carry out the provisions of the act; and might appoint and fix the compensation of suitable engineers and other persons to supervise and inspect all the work by said act authorized to be done. The said aqueduct commissioners were also empowered to procure any work to be done without contract, not involving the expenditure of over five thousand dollars, if they should certify that, in their opinion, it was for the public interest that such work should be so done, and in such certificate they were required to state their reasons therefor.

Pursuant to the authority thus conferred upon this board, forms of contract and specifications were proposed by the commissioner of public works to the aqueduct commissioners and approved by them, and also, as to form, by the corporation counsel. Bids were thereupon invited in the manner provided by the statute for different portions of the contemplated work; and the plaintiffs in this action having bid for that portion of the work known as section 5, the contract therefor was awarded to them, and a contract in the manner prescribed by the statute was executed by the said contractors, and on behalf of the city by the aqueduct commissioners.

By this contract the plaintiffs agreed that they would, at their own expense, and in strict conformity to the specifications in said contract contained, furnish all the materials and labor necessary or proper for the purpose, and in a good, substantial and workmanlike manner excavate a tunnel and its shafts, do all other excavation and build all masonry, and do all other work necessary to build the aqueduct and all its appurtenances from the points therein named, in the manner and under the conditions therein specified.

Various general provisions then follow in the contract, to the effect that to prevent all disputes and litigation, it was agreed between the parties to it that the engineer should, in all cases, determine the amount of the work and quantities of the several kinds of work which were to be paid for under the contract, and should determine all questions in respect to said contract and the construction thereof, and in all cases decide every question which might arise relative to the execution of the contract on the part of the contractor, and this estimate and decision should be final and conclusive in case any question should arise; and should be a condition precedent to the right of the plaintiffs to receive any money under the contract. And the work to be done under the contract being mostly underground, and it being impossible at the time of the execution of the contract to estimate with accuracy the quantity of the various classes of work to be done and materials to be furnished, it was, therefore, therein stated to be expressly understood and mutually agreed that the estimated quantities stated in the notice attached to the contract should be only for the purpose of comparing on a uniform basis the bids offered; and the contractor agreed that neither the parties of the first part, nor the aqueduct commissioners, nor any of them, were to be held responsible that any of the said estimated quantities should be found even approximately correct in the construction of the work; that he was satisfied and would at no time dispute the said estimated quantities as a means of comparing the bids, and that he would make no claim for anticipated profits, or loss of profits, because of a difference between the quantities of the various classes of work actually done or materials furnished and said estimate; and he undertook and agreed that he would complete the entire work to the satisfaction of the aqueduct commissioners, and in accordance with the specifications and plan in said contract men-

tioned, at the price therein agreed upon and fixed therefor, except. for such extra work for the performance of which written orders might be received as in said contract elsewhere specified.

It was further agreed that the said tunnel, shafts and trenches. should be excavated, and the masonry built, and all the work, labor and material to be done and furnished under the contract should be done and furnished strictly pursuant to and in conformity with the specifications attached to the contract, and the direction of the engineer under them, which specifications were declared to form a part of the contract.

By the first paragraph of said specifications it was provided that. they showed the location of the work and its general character, and that, during the progress of the work, working plans should be furnished by the engineer, and that all work during its progress. and on its completion must conform truly to the lines and levels. given by the engineer, and must be built by the plans and directions. given by him from time to time; subject to such modifications and additions as he should deem necessary during its execution, and that in no case would any work in excess of the requirements of the plan or specification be paid for unless ordered in writing by the engineer as thereinafter set forth.

Paragraph 8 declares that borings have been made on portions of the line to ascertain the nature of the underground strata through. which the shaft and tunnel are to be constructed, and the results of the borings are shown on the plans, but should the character and extent of the various materials be found to differ from what is. indicated the contractor shall have no claim on that account, and it is expressly understood that the city does not warrant the indications. of the borings to be correct; and paragraph 9 provides that the places where it is believed that the excavation is to be in tunnel, and where in open trench, and the limits of each are shown on the plan, but if, in the opinion of the engineer, the nature of the material to be excavated at any point, or the conditions of the case shall render it advisable, he may require the excavation to be made. in tunnel, although the plans indicate that it is to be made in open trench, or *vice versa.*

Paragraph 18 provides that masonry should be built within the tunnel at such points, and of such material, and of such form

and dimensions as the chief engineer may determine from time to time, referring to certain sheets for illustrations of some of the proposed forms.

Paragraph 19 provides for weepers of certain dimensions to be built in the sidewalks and floor, and that no deduction in the measurement of the masonry will be made for the weepers, which must be built true and smooth.

Paragraph 21 provides that the tunnel at any place is to be excavated to the lines of the cross-section determined by the engineer for that place ; and that no payments would be made for any excavating outside of the cross-section of the tunnel excavation determined by the engineer, but all loose or shaky rock must be removed. The price per cubic yard stipulated in said contract for tunnel excavation was to cover all excavation due to the presence of quicksand or other soft material, rotten rock, boulders, etc. ; and the cost of all pumping and bailing, of all timbering and the removal of same, of removing all excavated materials, of all ventilation, and of all other work incident to the excavation of the tunnel, and any expenses that might arise from loose and shaky rock or from falls or caves in or from unexpected obstacles, was to be borne by the contractor.

Paragraph 22. The engineer was authorized to order at any time additional excavations in the tunnel or shafts, and the contractor was to do such excavation, which was to be measured according to the lines of the cross-sections determined by the engineer, and paid for by the cubic yard as tunnel excavation.

By paragraph 23 it was provided that if, after the excavation had been made of a certain size by direction of the engineer, he should be of the opinion that the nature of the rock or other material was such that the form and dimensions of the masonry for which said excavation was intended must be increased, he might order an enlargement of the excavation for the purpose of building masonry of greater thickness, and the contractor was to make such enlargement, which was to be measured according to the lines given by the engineer, and to be paid for at the price per cubic yard in said contract stipulated for tunnel excavation.

Paragraph 24. In rock excavation the drilling and blasting was to be conducted with all possible care so as not to shatter the roof and sides of the tunnel outside of the lines determined by the

engineer, and in soft material precaution must be taken not to allow cavities to be formed behind the timbering or other supports; and especially in the vicinity of the existing Croton aqueduct the blasting and timbering, and any other operation connected with the work, should be so regulated as not to cause injury to said aqueduct. And the contractor was to be held responsible for all injuries to said aqueduct caused by his work.

Paragraph 25. If, in the opinion of the engineer, the contractor, by the use of too high explosives, bad location of drill-holes and defective arrangement of timbers or supports, or want of proper skill or attention, should excavate the tunnel or shafts to greater dimensions than was required for the proper building of the masonry, the excess of tunnel or shaft area thus formed should be filled solid, at the expense of the contractor, with such kinds of masonry (brick, concrete or rubble masonry, as in said contract specified), or other material as the engineer might direct.

By paragraph 26 the contractor was made responsible for properly supporting the roof and sides of the tunnel, and the sides of the trenches and shafts, with timber or other supports. And it was further provided that if the engineer should be of opinion that sufficient or proper supports had not been provided he might order additional supports, or order them modified or replaced at the expense of the contractor; and the compliance with such order by the contractor should not relieve or release him from his responsibility for the sufficiency of such supports.

Paragraph 49 provided that all lines and grades were to be given by the engineer, who might change them, from time to time, as he might be authorized and directed by said aqueduct commissioners, even to the extent of lowering or raising the grade line of the aqueduct, or ordering vertical or side drifts.

By paragraph 51 it was stated that the plans and specifications were intended to be explanatory of each other, and should any discrepancy appear, or any misunderstanding arise as to the import of anything contained in either, the explanation and decision of the chief engineer should be binding and final upon the contractor, and all explanations required, alluded to or necessary to complete any of the provisions of the specifications and give them due effect, were to be given by the engineer.

By section H of the specifications it was provided that no claim for extra work should be made unless, before the performance of such extra work, the said commissioners should have first authorized, in writing, such extra work, and should have also first certified, in writing, for each and every order that it is, in their opinion, for the public interest that such extra work should be done, stating in such certificate their reasons therefor; nor unless, before the performance of such extra work, the price or prices to be paid therefor should likewise first have been agreed upon in writing between said commissioners and the contractor; and done in obedience to the written order of the chief engineer; and that the aggregate price should not exceed the sum of $5,000 on any one order.

By subdivision O the prices for the work and its general character were fixed; for tunnel excavation, including all work incidental thereto, seven dollars per cubic yard was to be paid; for brick masonry laid in American cement-mortar, and all incidental work, ten dollars per cubic yard; for concrete masonry, including all incidental work, five dollars per yard for one composition, and five dollars and fifty cents for another; and for rubble-stone masonry, including all incidental work, five dollars per cubic yard, etc.

By subdivision T of the specifications it was provided that, in order to enable the contractor to prosecute the work advantageously, the engineer should once a month make an estimate of the work done, and the value thereof according to the terms of the contract, which estimate should not be required to be made by strict measurement, but might, at the option of the engineer, be approximate only; and that upon each such estimate being made the contractor was to receive ninety per cent of the estimated value of the work done and materials furnished; and that whenever, in the opinion of the engineer, the contractor should have completely performed his work, the engineer should so certify in writing to the aqueduct commissioners, and his certificate should state, from actual measurement, the whole amount of the work done by the contractor, and also the value of the work according to the terms of the contract; and that on the expiration of thirty days after the acceptance by said commissioners of the work agreed to be done, the city should pay to the contractor in cash the amount remaining, after deducting from the amount so

valued, contained and stated in said last-mentioned certificate, all such sums as should theretofore have been paid.

And by subdivision U it was expressly agreed and understood that the city of New York should not, nor should any department or officer of the city of New York, be precluded or stopped by any return or certificate made or given by any engineer, inspector or officer, agent or appointee of said aqueduct commissioners, from at any time showing the true and correct amount and character of the work which should be done, and the materials which should have been furnished by the contractor.

And by subdivision V it was expressly understood and agreed that the action of the engineer, by which the said contractor was to be bound and concluded according to the terms of his contract, should be that evidenced by his final certificate; all prior partial payments being merely upon estimates, subject to the correction of such final certificate, which final certificate might be made without notice thereof to the contractor, or the measurements upon which the same was based.

The plaintiffs, the contractors, having entered upon and completed the work mentioned in the contract, brought this action to recover certain sums alleged to be due for work done by them under and in pursuance of said contract, or during and in the course of the performance thereof.

The answer of the defendant was to the effect that the chief engineer of the aqueduct commissioners proceeded to determine and did determine the amount and quantities of the several kinds of work which were to be paid for under said contract, and the whole amount and the value of said work under and according to the terms of said contract, and made his final estimate and decision thereof and evidenced the same by his certificate, wherein he stated, from actual measurement, the whole amount of work done by the plaintiffs and the value of such work under and according to the terms of said contract; and that, as appears by said estimate and decision and final certificate, there remained due to the plaintiff the sum of about twenty thousand dollars, and no more; and denied generally all liability beyond this sum for any work claimed to have been done by the contractors.

Upon the trial a verdict was directed in favor of the plaintiffs for

said sum only, and from the judgment thereupon entered the plaintiffs take this appeal. It will be impossible to discuss in detail the questions which arise relating to the numerous causes of action set out in the complaint, some of which are stated in various forms. But it will be sufficient in determining this appeal to confine ourselves to the consideration of some general propositions which necessarily dispose of all the claims which have been advanced, both upon the part of the plaintiffs and the defendant.

It is apparent that the plaintiffs must be claiming either for work done under the contract in question, and pursuant to its terms, or for work outside of its provisions, and which, therefore, necessarily comes under the designation of extra work.

From the language of the complaint it is difficult to determine as to whether the plaintiffs seek a recovery because of any extra work, or whether they simply desire to declare that all the work for which they claim compensation has been done in pursuance of the contract.

In considering this question it must be borne in mind that the liability of the defendant is strictly statutory; and we must look to the act of 1883 for the authority to impose whatever liability the defendant has incurred. This is manifest, because the work in question was not done by the agents or servants of the defendant corporation. The Croton aqueduct commissioners and their employees were independent of the corporation as to the tenure of their office, and the manner of discharging their duties, and they were in no way amenable to the corporation. The subordinates were subject entirely to the orders and direction of the aqueduct commissioners, who were created by direct legislative enactment.

Such being the relations between the city and the persons who had charge of this work, the authority of those persons to charge the city must necessarily be found in the law creating them, and defining the manner and method by which they were to accomplish their work. The legislature took upon itself to construct by its own officials a public work for the benefit of the inhabitants of the city of New York, and by virtue of its sovereign power, ignoring all claim which the municipal corporation might have to control its own private affairs, put its hands into the public treasury of said city for the purpose of paying the expenses thereof. With the

question as to the initiation of this work, or its progress or manner of execution, the city had nothing whatever to do.

Its office was to pay those obligations which the statute authorized to be imposed upon it; and it had no other relation to or connection with the work in question.

In this respect the position of the city differs materially from that which it occupied in the case of *Bailey* v. *Mayor* (3 Hill, 531; 4 Denio, 433), as in that case the work could not proceed without the authority of the electors in the city.

By the act under consideration it is apparent that the only manner in which liability could be created against the city, beyond the amount of $1,000, was by writing, and beyond the amount of $5,000 by contract in writing, except that relating to the surveys, maps, plans and estimates necessary to be prepared, and in reference to the compensation of engineers and other persons to supervise and inspect the work by the act authorized to be done.

No claim is presented for extra work in which these requirements of the statute have been complied with. And, therefore, it follows that for such extra work, even if performed, no liability could be imposed upon the city, because, as has already been stated, the persons having the control of the construction of this public work were acting pursuant to legislative authority; and only for such expenditures as could be shown to have been incurred pursuant to such legislative authority could the city be made liable. The claims, therefore, of the plaintiffs must be considered as presented for work done under the contract and pursuant to its terms, and the questions of difference between the plaintiffs and the defendant, as far as the questions involved in this appeal are concerned, therefore, relate to the construction of the terms of the contract.

It seems to be claimed, upon the part of the plaintiffs, that they were bound to follow the directions of the engineer in chief and his assistants; and are entitled to avail themselves in this action of constructions which were given by the engineer during the progress of the work in reference to the terms of the contract.

It is apparent, both from the language of the statute and also from the language of the contract, that liability could not arise out of talk. The aqueduct commissioners were expressly prohibited from creating liabilities in that way; and the contract prevented

the engineer from directing the performance of any work in excess of the requirements of the plans and specifications unless in writing. It is true that the work was to be performed in accordance with the plans of the engineer and the directions given by him from time to time, subject to such modifications and additions as he should deem necessary during its execution. But it is apparent that if any of these modifications were in excess of the requirements of the plans and specifications, it was necessary that the engineer should order the same in writing. And, therefore, primarily, the obligation of the city to . pay must be either because of work done or materials furnished pursuant to the strict letter of the contract, or of the performance of some work in excess of the requirements of the plans or specifications ordered in writing by the engineer. But even these are not sufficient to constitute a complete obligation upon the part of the city, because such obligation to pay depends upon the giving by the chief engineer of his final certificate based upon actual measurements as to amount of work done, the value of which work was to be determined by the terms of the contract.

In the case at bar such final certificate was given, and for the amount represented by such final certificate the plaintiffs have had judgment. But it is claimed, upon the part of the plaintiffs, that such final certificate is incorrect in that it improperly excludes work done by the plaintiffs, for which, under the terms of the contract, they are entitled to compensation. There is no imputation that this certificate was fraudulently given; and, therefore, it would seem that the plaintiffs are bound by its terms, if the language of the contract which was entered into by them with the aqueduct commissioners upon the part of the city is to receive any reasonable interpretation.

With the hardships of such a construction we have nothing to do. The obligation of the city, as has been heretofore more than once repeated, depends upon the terms of this contract; and if no such obligation is shown upon the part of the plaintiffs according to the terms of the contract, we cannot see where liability upon the part of the city arises. And, therefore, it would seem that this final certificate was absolutely conclusive, and whether it could be impeached for fraud or not is a question which it is not necessary for us now to determine.

But the difference between the engineer, in giving the final certificate, and the contractors seem to depend upon the construction of the terms of this contract; the claim of the plaintiffs being largely based upon the fact that in the early part of the work, before its final completion, the engineer intimated that some more liberal construction of the contract ought to be made for the benefit of the plaintiffs. But it does not seem to require argument to show that the limitations of the contract could not be construed away by interpretations of the chief engineer ; and we have searched in vain through the contract for any provision therein contained which would justify such a construction.

It is true the work is to be done under the directions of the chief engineer, and he may modify the work and its manner of doing; but unless there is a provision in this contract for payment for that kind of modified work, then there is no obligation upon the part of the city to pay, and the contractor was not bound to do it.

It is true that it is urged that, in order that the work should progress at all, it was necessary that the contractor should follow the direction of the engineer. But this argument is based upon the maxim that necessity knows no law ; and that it being necessary for the contractor in his prosecution of this work to obey the directions of the engineer, even though they were without the pale of the law which gave the engineer any authority to act, still a liability exists.

Such is not the case. The engineer had no roving commission which would entitle him to alter the terms of this contract and impose additional obligations upon the city, independent of and at variance with its terms. The most that can be said is that, where the contract was ambiguous, the directions of the engineer in favor of one or another construction might, under the terms of the contract, be considered binding both upon the contractor and the city. But in a case where there has been provision in the contract for the doing of the work, and for the measurement of liability because of the doing of the work, the engineer had no power, by any interpretion that he might give, to waive its terms or obligations, and thereby impose additional burdens upon the city. The language of the statute is that in no event shall the city be held, in any action or proceeding brought or had under any contract so made, to any other

or greater liability than that expressed therein, nor required to pay out or otherwise dispose of any sum of money for the doing of such work or the furnishing of such materials greater than is stipulated in such contract, nor otherwise than in strict conformity to the terms thereof.

Therefore, it seems to us that all this discussion as to the interpretation the engineer placed upon this contract has no bearing upon the question as to the liability of the city; and although many of the claims of the plaintiff in reference to the action of the chief engineer may be shown by an examination of the record in this case to be unfounded, it is not necessary, in the view we have taken as to the relations of the parties, to enter into their discussion except in one or two instances.

One of the principal claims advanced by the plaintiffs is that relating to tunnel excavation, it being urged that under the contract they are entitled to recover, as for excavations, for all the space outside of the brick-work which has been filled with masonry, which masonry has been estimated and paid for by the defendant. In support of this position it is claimed that in places where the space is filled in with dry filling, outside of the brick-work, the tunnel excavation is allowed for and to be paid by the defendant; and that such payments were intended by the provisions of the contract has always been agreed to by the parties to the contract; and that the minimum line given to the contractors bounds a greater area than the line that only includes the outside of the brick-work; and that the evidence shows that one of the division engineers told the contractors, and illustrated to them on the face of the tunnel, that no rock should be left inside of a section sixteen feet high and sixteen feet wide, and that the work of excavation of the portion of the tunnel that was made from the commencement of the work until January, 1886, was done in accordance with that direction, and yet not a foot of the tunnel is estimated in accordance therewith.

The truth of the representations made by the plaintiffs in this regard it is not necessary to investigate, because the contract is certain and explicit in reference to the area that was to be allowed for in estimating tunnel excavation; and, as has already been intimated, no direction or statement upon the part of the engineer could modify its provisions.

The specifications (par. 17) provide that the form and area of the cross-section of the tunnel at any place shall be such as the engineer shall determine for that place; but at all points it shall have an area of at least 201 square feet. It then states that various forms of cross-sections of the tunnel are illustrated on sheets 8½, 9½ and 16 of the plans, and that on the plans the line limiting the cross-section of tunnel excavation is designated by letters A. A. A.

It is conceded upon all sides, and apparent upon an inspection of the plans, that the letters A. A. A. show the exterior line of the outside of the brick lining of the aqueduct. Therefore, the contract itself has defined what is intended in the contract by the words " cross-section " and what shall be its limits ; and, therefore, when the engineer has determined the diameter of the tunnel and the thickness of the lining he has determined the cross-section ; and there is no discretion given to the engineer to determine the cross-section in any other manner. Upon a determination made in this manner, the whole of the provisions of the contract in reference to tunnel excavation are based. Subdivision 21 says that the tunnel at any place is to be excavated to the lines of the cross-section determined by the engineer for that place, and that no payments will be made for any excavating outside of the cross-section of the tunnel excavation determined by the engineer, but all loose or shaky rock must be removed. It is certain that the loose or shaky rock removed under those circumstances is not to be paid for. If it were, why the necessity of stating the fact that it should be removed ? The space from which all the loose and shaky rock was to be removed was to be filled in, pursuant to the terms of the contract, with masonry, and the question as to whether the contractor should be paid for such masonry depends upon whether, in the opinion of the engineer, such loose or shaky rock had been caused by a want of proper skill or attention of the contractor in making the excavation. (Sub. 25.)

Furthermore, in the same subdivision 21, it is provided that the price per cubic yard stipulated in said contract for tunnel excavation was to cover all excavation due to the presence of quicksand or other soft material, rotten rock, boulders, and the cost of all pumping and bailing, of all timbering and the removal of same, of removing all excavated materials, of all ventilation and of all other

work incident to the excavation of the tunnel; and any expense that might arise from loose and shaky rock, or from falls or caves in or from unexpected obstacles, was to be borne by the contractor.

If the contractor was to be paid for the total excavation necessarily made in excavating the cross-section, why was there any necessity for the provision that any expense that might arise from loose or shaky rock, etc., or from unexpected obstacles be borne by the contractor.

That it was the purpose of the contract to limit the cross-section to the exterior line of the masonry lining of the tunnel is also evidenced by the twenty-third subdivision of the specifications, which provides that if after the excavation had been made of a certain size by direction of the engineer, he should be of the opinion that the nature of the rock or other material was such that the form and dimensions of the masonry for which such excavation was intended (evidently referring to the masonry lining of the tunnel), must be increased, he might order an enlargement of the excavation for the purpose of building masonry of greater thickness, and the contractor was to make such enlargement, which was to be measured according to the lines given by the engineer, and to be paid for at the price per cubic yard stipulated for tunnel excavation.

In other words, if after the engineer has determined the limits of the cross-section, consisting of the diameter of the tunnel *plus* the thickness of the brick-work, it is ascertained, because of the nature of the rock or other material, that it is necessary to have a thicker lining (masonry of greater thickness are the words of the specification), the engineer might order the additional excavation to be made. The contractor is bound to do the work and charge at the same rate for this additional excavation that he would have been entitled to receive had such enlargement not taken place, although it is conceded it was a more expensive method of doing the work for the contractor.

The argument that because a liability was recognized upon the part of the city to pay for filling solid (where such filling was by masonry), the area of excavation over the limits of the cross-section, provided it was not excessive, therefore, there was an obligation to pay for the excavation beyond the limits of the cross-section, cannot

prevail as the two are entirely independent, and they each recognize what the parties to the contract well understood to be the fact, that there must be excavation beyond the limits of the cross-section, and that that excess must be filled, if with masonry, to be paid for (sub. 18), if with dry filling, at the expense of the contractor. (Sub. 20.)

Hence the provisions of subdivision 25, authorizing the engineer to compel the contractors to fill in, at their own expense, such part of such excess of tunnel or shaft area as should be formed by want of proper skill and attention in the making of the excavation.

It is true it would appear as though the chief engineer was of the opinion that he had the right to do in respect to these contractors that which he might think was equitable, no matter what might be the provisions of the contract. But it is clear that he entirely mistook the position which he occupied, and the powers conferred upon him by the contract in question. Nothing that he could say or do could be made binding upon the defendant unless the authority for the saying and doing can be pointed out in the contract; and, therefore, all that was said in the monthly estimates, or in the letters of the chief engineer, which, in any respect, militate against the plain terms of the contract, were in no way binding upon the defendant. And when the aqueduct commissioners directed the engineer in his estimates to be governed by the contract they did nothing more than instruct him that he was bound by the law.

The claim of the plaintiffs for timber placed and fastened does not seem to have any foundation in the provisions of the contract. This claim seems to be based upon alleged misrepresentations made to the plaintiffs prior to the execution of the contract in regard to the nature of the ground that would be encountered, whereby the use of timbering became necessary, the plan being changed from open trench to tunnel.

It will be observed that subdivision 8 of the specifications, heretofore referred to, entirely relieves the city from any responsibility for representations as to the verity of the results assumed from the borings which had been made upon the line of the work; and that subdivision 9 gave authority to the engineer, whenever, in his opinion, it should be desirable, to change the excavation from open trench to tunnel; and that by subdivision 21 it is provided that the price

per cubic yard stipulated in the contract for tunnel excavation should include all timbering and the removal of the same.

It is true, when the change was made, that there was evidence that it was stated to the engineer that this new plan of timbering was going to cost the contractors much more, and the reply of the engineer was "Very well; you put the timbering in and we will pay you for it; and whatever extra it costs you, and the extra amount of timbering you put in there, we will have our engineers estimate you for, and pay you for it."

But this was not an order of extra work in the manner provided by the contract; and it was not included within the contract, hence there seems to be no foundation for this claim.

The claim as to grouting stands in precisely the same position, and clearly was not the masonry contemplated by the contract; and it would seem that the plaintiffs agreed to do it at their own expense, and that it was done by them voluntarily and in order to make their work complete under the contract; and that in any event it was extra work, and the conditions precedent to liability had not been fulfilled.

The claim in respect to extra work done and materials furnished on account of errors in alignment does not seem to be provided for by the contract, and hence no liability could arise.

It does not seem necessary to advert to the other causes of action particularly as the principles already enunciated seem to dispose of the claim founded upon such causes of action.

The claim for footing stones is admitted by the defendants to be an equitable one to the extent of $240. But the plaintiffs having made no claim to the engineer on this subject, and never having put him in a position in which he could allow the claim in his final certificate, it would seem that the condition precedent had not been complied with necessary to allow a recovery as matter of right to this amount. In fact very few of the causes of action alleged in the complaint have ever been presented to the chief engineer, or were presented to him prior to the making of his final certificate, so that he might pass upon the same, and include them in final certificate if it was proper to do so. This would seem to be an additional obstacle in the way of a successful prosecution of the claims made in the action at bar.

Upon the whole case, therefore, we are of opinion that a recovery cannot be had in this action beyond that which was ordered in the court below. As has been iterated and reiterated during this opinion, the foundation of all liability upon the part of the city must be found in the law and the contract, and unless it can be shown that the claimed liability has authority from the law commanding the contract, and from the contract, then clearly it does not exist.

It seems to us that the difficulty in the case arose from the fact that in the entering into this contract, and in the early progress of the work, both the contractor and the chief engineer entirely misapprehended their relations to it, and their rights and obligations under it, each assuming that equitable considerations might have their weight in determining questions where the rigid terms of the contract seemed to work a hardship.

In these both were clearly mistaken, as by the law liability could only be fastened upon the city in the manner by it prescribed.

The judgment should, therefore, be affirmed.

LAWRENCE, J., concurred.

PATTERSON, J. :

I concur in the views expressed in the opinion of the presiding justice and in the conclusion reached that the plaintiffs cannot recover in this action anything more than the amount of the judgment entered upon the verdict directed on the trial. There are several obstacles in the way of a further recovery on any of the causes of action set forth in the complaint, one of them being the final certificate of the engineer given in accordance with the requirements of the contract, and by which certificate the plaintiffs were necessarily bound, for there is nothing in the case, as I read it, that impeaches such certificate or would permit the court to ignore or disregard it. When the contract was entered into, it was in the form and contained stipulations adopted by the aqueduct commissioners, not only under the authority but by the peremptory command of the act creating the commission. Bids were invited upon that contract and the plaintiffs must have known all its terms, conditions and provisions when they entered upon the obligations they assumed under it. There was neither fraud nor any other legal

ground for attacking the final certificate. It was made by the contract, conclusive evidence as a final estimate, founded on actual measurements and on actual ascertainment of the work done, for which the plaintiffs were entitled to final payment from the city, and although it may have been made upon a different basis of computation from that which entered into the intermediate and provisional certificates, yet it seems to have been honestly made in accordance with the requirements of the contract in that regard; and as making it was a condition precedent to the right of the plaintiffs to receive final payment, and as the amount fixed thereby was to be the measure of ultimate liability, it stands as a barrier to any further recovery than that above referred to.

So far as the facts set forth in various causes of action asserted in the complaint are concerned, it seems to me that, notwithstanding the theory of liability predicated of them, all claims connected therewith come under the contract itself, and that in their nature, as considered with respect to the terms of the contract and the provisions of the statute as to the liability of the city, none of them can be enforced as claims arising extrinsic thereof. There, however, is one cause of action in respect of which a serious argument has been made, that the city is liable because of mistakes of the engineers in giving erroneous lines and levels of parts of the contract-work, whereby that work was largely increased and a much greater expenditure caused to the contractors than would have been necessitated had those erroneous lines and levels not been given. The claim is made that the city is liable for these mistakes of the engineers, for the reason that those who gave the instructions were the agents and servants or officers of the city, and the latter is bound by their acts, and is responsible to the plaintiffs as in an action for damages for negligence. At the trial the learned judge discarded this view and held the city was not liable. The authorities he cited in the opinion delivered by him in disposing of the case at the circuit sustain his ruling; and, upon the general principle relating to the liability of a municipal corporation for the negligence or wrongful acts of its servants or officers, I think, in view of the peculiar attitude in which the city stood to the subject-matter of the contract and to the aqueduct commissioners and its employees, the ruling was right. We have not been referred by the appellant's counsel to any adjudicated

case or decision at variance with the views expressed on this subject by the learned judge at circuit, but we suppose they would rely upon *People ex rel. Ryan* v. *Civil Service Board* (41 Hun, 287), as an authority opposed to the ruling under consideration. That case was decided by this court, and was affirmed by the Court of Appeals. It declared the status of the aqueduct commissioners and their employees as to the city, and distinctly held that they were agents and servants of the city within the meaning of the civil service act, and that this was so because the city was bound by the contracts of the commissioners. But it really decided nothing more than that. The court did not pretend to pass upon the questions of what contracts might be made by the commissioners, or the liability of the city for wrongful acts of the employees of the commissioners connected with work done under contracts. Even if the commissioners and employees were servants of the city, they were not so for all purposes of a general character.

The commissioners were limited by the statute, and their engineers and other employees had specific duties to discharge, and with the performance thereof the municipal authorities could not interfere. Although the work, when completed, would be for the benefit of the city, the commissioners were to act as an independent body. The city had no authority to contract for, meddle with or do anything whatever connected with the work. It could not compel performance or supervise the acts either of the contractors or the commissioners; it could not appoint or remove any one employed by the commissioners; it could not hold the contractors or the engineers to any accountability during the progress of the work. Interposed between it and the contractors was this self governing, distinct and separate body, with limited powers, and with no right to incur any liability for the defendant exceeding that, or outside of that, provided for by contract.

As said before, I am of the opinion that whatever claim the plaintiffs may have for work done or expense incurred by reason of alleged mistakes of engineers is altogether one under the contract. That the plaintiffs are entitled to compensation under the contract, and according to the rates established thereby for all work ordered by the engineers in execution of the contract, whether on mistaken or correct lines and levels, may be conceded.

That is a very different thing from a liability arising outside the contract. All the orders and directions of the engineers were given in prosecuting the work under the contract, and in the attempted and intended execution of the plans (original or modified) and specifications, and if we are correct in that statement it would seem to follow that the provisions of subdivision 30 of the contract preclude a recovery on the cause of action referred to.

LAWRENCE, J.:

I concur in this opinion on the authority of *Maxmilian* v. *The Mayor* (62 N. Y., 160).

Judgment affirmed.