ROSALIE MAXMILIAN, Administratrix, etc., Appellant, v. THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent.

Where, by legislative enactment, a municipal corporation is required to elect or appoint an officer to perform a public duty, laid not upon it but upon the officer, in which it has no private interest, and from which it derives no special benefit or advantage, such officer is not a servant or agent of the municipality, and for his negligence or want of skill in the performance of his duty, or for that of a servant whom he employs, it is not liable; and this, although the officer or servant has in charge, and the negligence is in the use of, corporate property.

The duties imposed upon the commissioners of public charities and corrections, in and for the city and county of New York, by the statutes creating and governing that department (chap. 510, Laws of 1860; chap. 137, Laws of 1870) are public in their character, and from their performance no especial corporate benefit is derived. Such officers therefore are not, nor are the subordinates appointed by them, agents or servants of the municipality for whose negligent acts it is liable.

Accordingly *held*, that the city corporation was not liable for the negli-

gence of an employe of the commissioners in driving an ambulance wagon belonging to the city which struck and caused the death of plaintiff's intestate.

*Jones* v. *New Haven* (34 Conn., 1); *Bailey* v. *The Mayor* (3 Den., 433); *Conrad* v. *Trustees, etc.* (16 N. Y., 158) distinguished.

(Argued April 28, 1875; decided May 25, 1875.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, affirming a judgment in favor of defendants entered upon an order dismissing plaintiff's complaint on trial at Circuit. (Reported below, 2 Hun, 263.)

This action was brought to recover damages for the alleged negligent killing of Max K. Maxmilian, plaintiff's intestate.

On the 26th May, 1871, said Maxmilian, while attempting to enter a street car in the city of New York, was struck and run over by an ambulance wagon which was driven by an employe of the Commissioners of public charities and corrections, and from the effect of the injuries received he died.

The evidence tended to show that the accident was caused by the negligence of the driver of the ambulance who was at the time engaged in the performance of his duties.

Defendants' counsel moved to dismiss the complaint on the ground, among others, that defendants were not responsible as the ambulance was in the use of the Commissioners of public charities and corrections, and the driver was in their employ, not that of the corporation. The motion was granted and plaintiff's counsel excepted.

*Lucien Birdseye* for the appellant. This action was properly brought against the defendants, and they are liable for the damages claimed. (*Blake* v. *Ferris*, 1 Seld., 48, 58; Story on Agency, § 454; 2 Dillon on Mun. Corp., §§ 772, 773; *Stone* v. *Cartwright*, 6 T. R., 411; *Pack* v. *Mayor, etc.*, 4 Seld., 22; *Kelly* v. *Mayor, etc.*, 1 Kern., 432; *Baulec* v. *N. Y. and H. R. R. Co.*, N. Y. Daily Reg., Feb. 15, 1875; *Mills* v. *City of Bklyn.*, 32 N. Y., 489.) An action against the department of charities and correction, or the commis-

sioners as such, would not lie. (*Gardner* v. *Bd. of Health of N. Y.*, 10 N. Y., 409 ; *People* v. *Suprs. of Monroe*, 18 Barb., 567 ; *Appleton* v. *Water Comrs.*, 2 Hilt., 432 ; *Clarrissy* v. *Met. F. Dept.*, 7 Abb. Pr. [N. S.], 352.) The principal and not the employing agent is liable. (*Lincoln* v. *Battell*, 6 Wend., 475 ; *Rourke* v. *Story*, 4 E. D. S., 54 ; Story on Agency, § 454.) Defendants were liable on the ground that the injury was the result of improper management and use of corporate property. (2 Dillon on Mun. Corps., § 780 ; *Bissel* v. *M. S. and N. I. R. R. Co.*, 22 N. Y., 258, 262–281 ; *Parish* v. *Wheeler*, id., 494.) The act of the city in establishing and maintaining its ambulance system was strictly ministerial, and not a judicial or administrative act. (*Mayor, etc.*, v. *Bailey*, 2 Den., 433 ; *Furze* v. *Mayor, etc.*, 3 Hill, 612–616 ; *Henley* v. *Mayor, etc.*, 5 Bing., 91 ; *Lloyd* v. *Mayor, etc.*, 1 Seld., 369 ; *Delmonico* v. *Mayor, etc.*, 1 Sandf., 222 ; *Rochester W. Lead Co.* v. *City of Rochester*, 3 Comst., 463.) Where a city assumes the discharge of a duty within its limits, the corporation becomes responsible for negligence in the discharge of it. (*Jones* v. *City of New Haven*, 34 Conn., 11, 13, 14 ; *Hines* v. *City of Lockport*, 60 Barb., 378 ; *City of Chicago* v. *Powers*, 42 Ill., 169 ; *Cotes* v. *City of Davenport*, 9 Iowa, 227 ; *Weightman* v. *Washington*, 1 Black, 39 ; *Nebraska City* v. *Campbell*, 2 id., 590.)

*D. J. Dean* for the respondents. The commissioners of the department of charities and corrections are not agents or servants of defendants, and defendants are not liable for the acts or negligence of said commissioners or their employes. (Laws 1860, chap. 510, p. 1026 ; 1 Laws 1870, 391, § 102 ; 2 Dillon on Corp., § 772 ; 1 id., § 39 ; *Mayor* v. *Bailey*, 2 Den., 433, 437 ; *Walcott* v. *Swampscot*, 1 Al., 101 ; *White* v. *Philipston*, 10 Metc., 108 ; *Riggs* v. *Foote*, 4 Al., 195, 197 ; *Buttrick* v. *Lowell*, 1 id., 172 ; *Kimball* v. *Boston*, id., 417 ; *Child* v. *Boston*, 4 id., 41, 52 ; *Morrison* v. *Lawrence*, 98 Mass., 219 ; *Russell* v. *Mayor, etc.*, 2 Den., 481 ; *Fisher*

v. *Boston,* 104 Mass., 87 ; *Martin* v. *Mayor,* 1 Hill, 545 ; *Lorillard* v. *Town of Monroe,* 11 N. Y., 392, 396 ; *Bk. of Comm.* v. *Mayor,* 43 id., 184 ; *Atwater* v. *Baltimore,* 31 Md., 462 ; *Hafford* v. *City of New Bedford,* 82 Mass., 297 ; *Terry* v. *Mayor,* 8 Bosw., 504 ; *O'Meara* v. *Mayor,* 1 Daly, 425 ; *Richmond* v. *Long,* 17 Grat., 375 ; *Sherbourne* v. *Yuba,* 21 Cal., 113 ; *Oliver* v. *Worcester,* 102 Mass., 489, 499 ; *Detroit* v. *Corey,* 9 Mich., 165.)

Folger, J. It is sought to charge the defendant in this case, upon the rule that the employer must answer for the negligent act of the servant : the rule of *respondeat superior.* And it is clear that upon no other principle can the defendant be charged. Conceding that the ambulance wagon and the horse before it, were the property of the defendant, there is no intimation that the establishment was not, in all respects, such as was fitting for the use for which it was kept, and to which it was in fact put at the time. It was personal property, well adapted to the service in which it was engaged, in itself innoxious. The harm to the plaintiff's intestate resulting alone from the immediate negligent use of it by the driver of the wagon, the servant in whose charge it was ; on the ground alone of a responsibility for that negligence, as the negligence of its servant, can the defendant be charged. This rule of *respondeat superior,* is based upon the right which the employer has to select his servants, to discharge them if not competent, or skillful or well behaved, and to direct and control them while in his employ ; (*Kelly* v. *The Mayor,* 11 N. Y., 432). The rule has no application to a case in which this power does not exist ; (*Blake* v. *Ferris,* 5 N. Y., 48). It results from the rule being thus based, that there can be but one superior at the same time and in relation to the same transaction (*Langher* v. *Pointer,* 5 Barn. & Cres., 560) ; as the law does not recognize two principals who are unconnected and severally responsible ; (*Hobbit* v. *L. and N. W. Railway,* 4 Exch., 253 ; *Pack* v. *The Mayor,* 8 N. Y., 222). And yet there may be sub-agents, servants under a servant ;

and whether they be appointed by the master or principal directly, or intermediately through the intervention of an agent authorized by him to appoint servants for him, can make no difference; (*Quarman* v. *Burnett*, 4 Mees. & Welsb., 499). That a municipal corporation, as is the defendant, may be placed by the facts of a certain case under the effect of this rule, and made answerable for the negligent use of its well adapted personal property by its servant or subservant, need not be denied; (*Lee* v. *Sandy Hill*, 40 N. Y., 442; *Clark* v. *Washington*, 12 Wheat., 40; *Scott* v. *The Mayor*, etc., 37 Law and Eq., 495). The difficulty is not here; it is in determining, in a particular case, whether the negligent employe is the servant of the municipality, for it is not every one who has in charge personal property owned by the municipality, and sets about some lawful act with it within the municipal bounds, that is its servant; nor even if his appointment comes intermediately or immediately from the municipality itself. If the act of the officer or the subordinate of the officer thus appointed, is done in the attempted performance of a duty laid by the law upon him and not upon the municipality, then the municipality is not liable for his negligence therein. Such is the general principle laid down in *Martin* v. *The Mayor* (1 Hill, 545), and reasserted in *Lorillard* v. *The Town of Monroe* (11 N. Y., 392), and in other cases. (See, also, *Russell* v. *The Mayor*, 2 Denio, 461; *Bk. Comm.* v. *Mayor*, etc., 43 N. Y., 184–189.) There are two kinds of duties which are imposed upon a municipal corporation : One is of that kind which arises from the grant of a special power, in the exercise of which the municipality is as a legal individual; the other is of that kind which arises, or is implied, from the use of political rights under the general law, in the exercise of which it is as a sovereign. The former power is private, and is used for private purposes; the latter is public and is used for public purposes; (*Lloyd* v. *The Mayor*, 5 N. Y., 374.) The former is not held by the municipality as one of the political divisions of the State; the latter is. In the exercise of the former

power, and under the duty to the public which the acceptance and use of the power involves, a municipality is like a private corporation, and is liable for a failure to use its power well, or for an injury caused by using it badly. But where the power is intrusted to it as one of the political divisions of the State, and is conferred not for the immediate benefit of the municipality, but as a means to the exercise of the sovereign power for the benefit of all citizens, the corporation is not liable for nonuser, nor for misuser by the public agents; (*Eastman* v. *Meredith*, 36 N. H., 284). Where the duties which are imposed upon municipalities are of the latter class, they are generally to be performed by officers who, though deriving their appointment from the corporation itself, through the nomination of some of its executive agents, by a power devolved thereon as a convenient mode of exercising a function of government, are yet the officers, and hence the servants, of the public at large. They have powers and perform duties for the benefit of all the citizens, and are not under the control of the municipality which has no benefit in its corporate capacity from the performance thereof. They are not then the agents or servants of the municipal corporation, but are public officers, agents or servants of the public at large, and the corporation is not responsible for their acts or omissions, nor for the acts or omissions of the subordinates by them appointed; (*Fisher* v. *Boston*, 104 Mass., 87). And where a municipal corporation elects or appoints an officer, in obedience to an act of the legislature, to perform a public service, in which the corporation has no private interest and from which it derives no special benefit or advantage in its corporate capacity, such officer cannot be regarded as a servant or agent of the municipality, for whose negligence or want of skill it can be held liable. It has appointed or elected him, in pursuance of a duty laid upon it by law, for the general welfare of the inhabitants or of the community. (*Hafford* v. *New Bedford*, 16 Gray, 297.) He is the person selected by it as the authority empowered by law to make selections; but when selected and its power exhausted he is

not its agent, he is the agent of the public for whom and for whose purposes he was selected. So that it may be, that a driver of an ambulance wagon owned by the defendant, is neither its servant nor under servant, for whose negligence it is responsible. How this is, is to be arrived at by a consideration of the provisions of law, under which the driver took charge of and conducted the horse and wagon. It is easily gathered from the case that he was not chosen immediately by the defendant, nor by any of its agents falling within the class of its executive officers, nor was he immediately controllable or removable by it or by them. He was immediately selected by, was under the immediate control of and power of removal of, the commissioners of public charities and correction. His payment came immediately from them, though the moneys therefor came out of the municipal treasury. Hence, he was no nearer, at the best for the plaintiff, than a sub-agent of the defendant; and not that, unless the commissioners of charities and correction were agents of the defendant rather than public officers of the greater public. These commissioners have their direct creation, their direct grant of power and their direct imposition of duty from the act of 1860 (Laws of 1860, chap. 510, p. 1026), though they succeed to the powers and duties of similar officers theretofore existing. By this act that department is created in the city and county of New York, and it is declared that there shall be chief officers thereof, and their name of office is designated. (Sec. 1.) They thereby have their appointment from the comptroller of the city and county, though since then they are made a department of the city and appointable by the mayor. (Laws of 1870, chap. 137, p. 366, §§ 29, 30; page 386, § 80.) It is not needed that I minutely enumerate all the powers which were conferred upon this department and its chief officers. They were powers of control, management, maintenance and direction, over all the real and personal property which theretofore was of the alms-house department, with certain exceptions immaterial here, and of appointment and removal of subordinate officers, and to

require of the supervisors of the county the levy by tax of such moneys as should be needed· by them, and of control of the poor and of certain other persons. The duties of this department and its head officers were to care for paupers, for poor and destitute children, for lunatics and strangers, and for certain persons committed for offences. This becomes the practical question: Are the acts, which are to be done by the commissioners of charities and correction, acts to be done by them in their capacity as public officers in the discharge of duties imposed upon them by the legislature for the public benefit; or are they acts done for the defendant, in what may be called its private character, in the management of property or rights voluntarily held by it for its own immediate profit or advantage as a corporation, though inuring ultimately to the benefit of the public? (*Oliver* v. *Worcester*, 102 Mass., 489.) There can be but one answer. The defendant is in no different position, in kind, from that in which is placed a township the most retired, the most sparse in population, in the State. The latter is under a law which requires its electors to elect officers, whose powers and duties are of the kind which the commissioners of charities and correction have. Those officers may for the time, as do the commissioners permanently, employ servants. The town has not the selection of those servants, nor the control nor power of removal of them. Nor is it interested, as a municipal division of the State, for its private emolument or advantage, in their acts. The overseers of the poor of a town, and the commissioners of charities and correction, are public officers, though getting ·their right of office from a circumscribed locality ; and the acts which they may do, are to be done in their capacity as public officers, in the discharge of duties laid upon them by the law for the public benefit, and far removed from acts done by city or town, in its municipal character, in the management of its property for its own profit or advantage. It is seen at once that the powers and duties of the commissioners of charities and corrections are not to be exercised and performed for the especial benefit of the defendant.

It gets no emolument therefrom, nor any good as a corporation. It is the public, or individuals as members of the community, who are interested in the due exercise of these powers and the proper performance of their duties. They are such powers as are to be held by some officers throughout the State, in every part thereof, such duties as are to be performed in every local political division of the State, not for the peculiar benefit of such division but for the public, in the discharge of its duty to suffering or wayward members of the whole body politic. The territorial boundaries of the defendant are taken by the legislature acting as the organ of the sovereign power, and within them is created a department, and constituted a board of chief officers which, within those boundaries, is to have the power to use the public moneys of that political division of the State, for the due discharge of the duty of the State in that locality to the poor, the crazed, the wicked. It is a public duty laid upon the defendant, as a convenient mode of exercising a function of government, that it should, through its chief executive officer, from time to time appoint the chief officers of this department, and from time to time supply it with the means of performing its special public duties. These chief officers, though in a sense its officers, as having no power unless after appointment by it, and as mainly confined within its territorial boundaries, are yet officers of the State government, in the sense that they perform its function within a designated political division of the State. The defendant may not control them, save in strict accordance with the provisions of law. It does not select, nor control, nor remove, nor immediately pay their subordinates, their agents, their servants, and may not do so. How then does the principle of *respondeat superior*, apply to its relations to them and to the plaintiff, upon the case which she brings here? Nor does a review of all the various legislative provisions by which, in this division of the State, like duties have been performed by the exercise of like powers, though by officers, predecessors of these, deriving authority in slightly differing ways and to slightly differing extent, lead

to a different conclusion as to the relation of the defendant to them. Through all the changes of enactment, it has been a duty laid upon this political division of the State, to provide the officers and the moneys for the care of certain classes of citizens; a duty, from the discharge of which no especial corporate benefit was to be had, and which was but the exercise of general power through local instrumentalities. The driver, the negligent actor, was the servant of the commissioners of the department of charities and correction. He was appointed by them, and put in charge of property of the defendant which was under their especial control. He was under their control only, liable to direction and removal by them only. He received his compensation directly from them, at a rate fixed by them. He could have but one superior liable for his negligent acts. The defendant was not that superior; for he was not its servant by immediate appointment, nor was he its sub-servant; for the commissioners though appointed by the defendant, in obedience to the statute, were selected to perform a public service not peculiarly local or corporate, because that mode of selection was deemed expedient by the legislature in the distribution of the powers of government, and are independent of the defendant in the tenure of their office and the manner of discharging their duties, are not to be regarded as servants or agents of the defendant, for whose acts or negligences it is liable, but as public or State officers with the powers and duties conferred upon them by statute.

There are cases, some of which are cited by the plaintiff, which are supposed by counsel to conflict with these views, but they are to be distinguished, and rest upon principles at harmony with those relied upon here. Where the duty is upon the city itself and not upon public officers appointed by it, where it accepts the duty and the power to perform it, and itself, by its own agents, sets about the work, or undertakes to set about it by its own agents, then, for negligent omission to do or for doing in a negligent way, it may be liable. Such was *Jones* v. *New Haven* (34

Conn., 1). The power there given, from which the duty arose which was neglected, was said to be a power or privilege conferred upon the city at its request, and that the duty was not a public one. And so where it authorizes a use of its corporate property, which use itself makes that property harmful to others, it is liable. Such is understood to be one of the grounds on which went *Bailey* v. *The Mayor* (2 Denio, 433). And the duty of keeping in repair streets, bridges and other common ways of passage, and sewers, and a liability for a neglect to perform that duty, rests upon an express or implied acceptance of the power and an agreement so to do. It is a duty with which the city is charged for its own corporate benefit, to be performed by its own agents, as its own corporate act; (*Conrad* v. *Trustees of Ithaca*, 16 N. Y., 158). It is not always easy to say within which class a particular case should be placed. But when it is determined that the power and duty are given and taken for the benefit. of the corporation as a corporate body, and the act to be done is to be done by it through agents of its appointment and under its control and power of removal, there is no doubt of its liability for negligent omission or negligent attempt at performance. When the powers created and duly enjoined are given and laid upon officers to be named by the corporation, but for the public benefit and as a convenient method of exercising a function of general government, and the corporation has no immediate control nor immediate power of removal of those officers, nor of their subordinates and servants, then it is not liable for their negligent omission or action. This court is of the opinion that in the light of past decisions. upon these points this case falls within the latter class.

The judgment must be affirmed, with costs.

All concur.

Judgment affirmed.