WILLIAM A. WILCOX, Respondent, *v.* THE CITY OF ROCHESTER, Appellant.

1. MUNICIPAL CORPORATIONS — ROCHESTER (CITY OF) — WHEN CITY EXERCISES PUBLIC GOVERNMENTAL, NOT MUNICIPAL, FUNCTION IN MAINTENANCE OF BUILDING FOR POLICE HEADQUARTERS — WHEN NOT LIABLE FOR INJURIES CAUSED BY NEGLIGENCE OF EMPLOYEE THEREIN. Upon principle and authority, as well as under the act for the government of cities of the second class (L. 1898, ch. 182, § 181), defining the powers and duties of the members of the police force in cities of the second class, the city of Rochester, in the appointment and maintenance of a police force, exercises a public governmental function, so that it is not responsible for the unlawful or negligent acts of policemen in the discharge of their duties; and the maintenance, management and repair of a building used and occupied as a police headquarters for its police department and by the police court, with a telephone and telegraph system for the police patrol and fire alarm, and with cells for the temporary detention of prisoners arrested by the police, is an appropriate and necessary

element in the maintenance of the police force, and is also the exercise of a public governmental function, not a municipal function; hence, the city is not liable for injuries sustained by a mechanic on his way to repair the roof of the building, alleged to have been caused by the negligence of a police telegraph operator, in leaving open the door to an elevator shaft when the elevator had been moved upward and away from the door, so that the mechanic, believing that the elevator was still there, stepped through the door and fell to the bottom of the shaft.

2. SAME — WHEN CONTENTION THAT CITY EXERCISES GOVERNMENTAL, NOT MUNICIPAL, FUNCTION IN MAINTENANCE OF POLICE HEADQUARTERS, NEED NOT BE PLEADED — WHEN IT MAY BE CONSIDERED UPON APPEAL. The contention that the maintenance, management and repair of the building used as a police headquarters for the police force of the city of Rochester is a governmental, not a municipal, function is a purely legal objection that the city was not required to plead in its answer in the action brought by such mechanic to recover for the injuries caused by his fall in the elevator shaft, and may be considered by the Court of Appeals upon the appeal of the city from an order of the Appellate Division affirming a judgment of the trial court entered upon a verdict in favor of the plaintiff, where the evidence as to the character and uses of the building was admitted without objection and was uncontroverted, and, especially, where the objection was raised on the defendant's motion to dismiss, made at the close of the trial, and where the dissenting opinion in the Appellate Division shows that it must have been considered by that court.

3. CONTRIBUTORY NEGLIGENCE — WHEN QUESTION PROPERLY SUBMITTED TO JURY. Where the evidence upon the trial of such action was conflicting as to whether the elevator was wholly or only partly open, the trial court and the Appellate Division were not only justified in holding that the question of the contributory negligence of the plaintiff was a question for the jury, but they were required so to hold.

*Wilcox* v. *City of Rochester*, 114 App. Div. 734, reversed.

(Argued October 15, 1907; decided December 10, 1907.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered July 19, 1906, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William A. Sutherland* for appellant. The defendant, although a municipal corporation, was engaged solely in the

discharge of governmental functions, in the operation and management of the police station, and cannot be held liable for any alleged negligence of the servants and employees necessarily engaged in the maintenance and furtherance of the uses to which said building was devoted. (*Moest* v. *City of Buffalo*, 116 App. Div. 657; *Snider* v. *St. Paul*, 51 Minn. 466; *Hughes* v. *Monroe County*, 147 N. Y. 49; *McKay* v. *City of Buffalo*, 9 Hun, 401; 74 N. Y. 619; *Eddy* v. *Ellicottville*, 35 App. Div. 256; *Smith* v. *City of Rochester*, 76 N. Y. 506; *Reynolds* v. *Bd. of Education*, 33 App. Div. 88; *Lorillard* v. *Town of Monroe*, 11 N. Y. 392; *Maximilian* v. *Mayor, etc.*, 62 N. Y. 160, 169, 170; *Davidson* v. *Mayor, etc.*, 24 Misc. Rep. 560; *Brown* v. *City of New York*, 32 Misc. Rep. 571.) Plaintiff's own heedlessness brought on the accident. (*Griffin* v. *Manice*, 166 N. Y. 188; *Wilson* v. *R., W. & O. R. R. Co.*, 39 N. Y. 358; *Crown* v. *Orr*, 140 N. Y. 450; *Dieboldt* v. *U. S. B. Co.*, 81 Hun, 195.)

*George B. Draper* for respondent. The evidence required the submission to the jury of the question of defendant's negligence. (*Stuber* v. *McEntee*, 142 N. Y. 200; *Baker* v. *Bailey*, 16 Barb. 54; *Ex parte Wall*, 107 U. S. 265; *Griffin* v. *Manice*, 166 N. Y. 188; *Tousey* v. *Roberts*, 114 N. Y. 312; *Ehrgott* v. *Mayor*, 96 N. Y. 270; *Fox* v. *Philadelphia*, 208 Penn. St. 127; *McRickard* v. *Flint*, 114 N. Y. 222; *Wetmore* v. *Bruce*, 118 N. Y. 319; *Newson* v. *N. Y. C. R. R. Co.*, 29 N. Y. 390.) Appellant cannot now raise the question that the city was acting in the discharge of a governmental function in the maintenance of the police building, and, therefore, not liable for the negligence of its servants employed in the maintenance of that building, because it failed to plead such a defense and failed to raise that point at the trial. (*Schoemer* v. *City of Rochester*, 15 Abb. [N. C.] 57; *Sewell* v. *City of Cohoes*, 75 N. Y. 45; *N. Y. B. N. Co.* v. *H. B. N. Co.*, 180 N. Y. 280; *Sterrett* v. *T. A. R. R. Co.*, 123 N. Y. 659; *Quinlan* v. *Welch*, 141 N. Y. 158; *Gerding* v.

*Haskin*, 141 N. Y. 514; *Martin* v. *Home Bank*, 160 N. Y. 190.) The city is liable for negligence of the men who were in charge of the elevator. (*Ehrgott* v. *Mayor, etc.*, 96 N. Y. 270; *Missano* v. *Mayor*, 160 N. Y. 123; *Pettingill* v. *City of Yonkers*, 116 N. Y. 558; *Fox* v. *Vil. of Manchester*, 183 N. Y. 149 ; *Williams* v. *Village of Portchester*, 97 App. Div. 84; *Danaher* v. *City of Brooklyn*, 119 N. Y. 241; *Wahrman* v. *City of New York*, 111 App. Div. 345 ; 187 N. Y. 331.)

WILLARD BARTLETT, J. The city of Rochester has been held liable in this action for the alleged negligence of the persons having charge of the condition and operation of an elevator in a police station building in that city. The plaintiff was injured by falling to the bottom of the elevator well, through an open door in the elevator shaft. He was a journeyman sheet metal worker in the service of a firm of contractors who were employed to repair the roof of the police station. He had been working upon the roof on the day before the accident and had been in the elevator two or three times on that day, when the elevator was operated by James A. Smith, who is described as an assistant engineer in the employ of the city. On the morning of the accident, which occurred on June 28, 1904, the plaintiff arrived at the police station, to go to work on the roof, at a few minutes before eight o'clock. As he entered the front doors of the building he met Smith, whom he recognized as the man who had been running the elevator when he went up and down. He testifies that Smith was coming from the elevator, the door to the elevator being open. The plaintiff and a fellow-workman, evidently acting under the impression that the elevator was in a position to be entered with safety through the open door, proceeded toward the door ; the plaintiff stepped through, and in consequence of the elevator having meantime been moved upward and away from the door by a police telegraph operator, the plaintiff fell into the shaft and down to the bottom, a distance of ten or twelve feet, sustaining the injuries of which he complains in this suit.

Smith contradicts the plaintiff, so far as the position of the door is concerned, saying first that it was shut but not locked, and then that it was partly open, and that he saw the plaintiff push the door back; but the jury were at liberty to accept the testimony of the plaintiff on this point as in accordance with the fact. Smith's testimony, however, shows that the plaintiff was justified, when he met Smith, in inferring that he had just come down in the elevator and had left the door in the position in which the plaintiff actually found it, whatever that may have been; for Smith testifies that he had been on the elevator prior to meeting the plaintiff; that he left it, he should judge, with the door half way open; that when he met the plaintiff and his companion he supposed that they wanted to go up in the elevator; and that he himself thought the elevator was still there, and had not noticed that it had been removed.

Under these circumstances the trial court and the Appellate Division were not only justified in holding that the alleged contributory negligence was a question for the jury, but they were required so to hold by authority very precisely applicable to the facts of the case at bar. (*Tousey* v. *Roberts*, 114 N. Y. 312, 316.)

The more serious question involved in this appeal is presented by the proposition urged upon us in behalf of the appellant, that in no event can the city of Rochester be held liable for any alleged neglect on the part of an employee in the police department for operating in any manner an elevator in the police building. The argument is that the defendant, although a municipal corporation, was engaged solely in the discharge of public governmental functions as distinguished from municipal functions, in the maintenance, management and repair of the police station, and, therefore, under the doctrine of *Maxmilian* v. *Mayor, etc., of N. Y.* (62 N. Y. 160) and similar cases, is not responsible for the acts or omissions of those engaged in applying the building to such public purposes of government. This was evidently the view entertained by the learned justice who dissented in the Appellate Division. He

wrote no opinion, but simply placed his dissent upon the authority of *Snider* v. *St. Paul* (51 Minn. 466) where the Supreme Court of Minnesota held, in reference to an elevator accident in the St. Paul city hall, that the duty of providing and maintaining a city hall was a public and governmental use and, therefore, the city was not responsible for the negligence of its officers, agents or servants in the management of such building.

The broad general doctrine of the *Maxmilian* case, which is certainly not now open to question in the courts of this state, is that " two kinds of duties are imposed on municipal corporations, the one governmental and a branch of the general administration of the state, the other *quasi* private or corporate ; " and " that in the exercise of the latter duties the municipality is liable for the acts of its officers and agents, while in the former it is not." (CULLEN, J., in *Lefrois* v. *County of Monroe*, 162 N. Y. 563, 567.) The question which confronts us, on the branch of this appeal now under consideration, is whether the duty exercised by the city of Rochester, under the general statutes relating to cities of the second class, of maintaining and caring for a police station, is a governmental duty appertaining to the general administration of the state or a duty imposed and undertaken for the benefit of the municipality as a corporate body. If it falls within the first of these categories, the present action cannot be maintained.

To my mind, it seems perfectly clear that if there is any logical validity in the distinction laid down in the *Maxmilian* case and so firmly established by the subsequent decisions of this court, it must be applied in favor of the defendant and appellant here. What powers and duties are there which can be conferred and imposed upon a municipality that more clearly constitute a function of general government than the power and duty to maintain a police force and provide suitable buildings for its occupation and use ? The agency which caused the accident out of which the *Maxmilian* case arose was the driving of an ambulance wagon

through the streets of New York by an employee of the commissioners of public charities and corrections. The statutory duties of the department of which the commissioners were the head were to care for paupers, destitute children, lunatics and certain classes of offenders. This court held that these functions were " acts to be done by them in their capacity as public officers in the discharge of duties imposed upon them by the legislature for the public benefit; " and that they were not acts done for the city of New York " in what may be called its private character, in the management of property or rights voluntarily held by it for its own immediate profit or advantage as a corporation, though inuring ultimately to the benefit of the public."

The general governmental character of the functions of the police in our cities strikes me as much more apparent than was such character on the part of the commissioners of public charities and corrections in *Maxmilian* v. *Mayor*, *etc.*, *of N. Y.* (*supra*). For one thing, their powers were strictly local, while in some respects the powers of municipal police officers extend throughout the entire state. On this point it is necessary to refer only to section 181 of the act for the government of cities of the second class, familiarly known to lawyers as the White Charter (Laws of 1898, chap. 182), which provides among other things as follows: " The members of the police force, excepting the surgeons, in criminal matters, have all the powers of constables under the general laws of the state; and they also have power and it is their duty to arrest any person by them found violating any of the penal ordinances of the city or laws of the state, and to take such person before the proper city magistrate, to be dealt with in the same manner as if such person had been arrested upon a warrant theretofore duly issued by such magistrate. * * * They shall also have in every part of the state in criminal matters all the powers of constables; and any warrant for search or arrest issued by any magistrate of the state may be executed by them in any part of the state, according to the tenor thereof, without indorsement," etc.

Indeed, I think it can hardly be disputed that, so far as relates to the appointment and maintenance of the police force, the city of Rochester exercises a public governmental function; so that it is not responsible for the unlawful or negligent acts of policemen in the discharge of their duties. (2 Dillon's Municipal Corporations [3d ed.], § 975.)    The suggestion is made, however, that inasmuch as the alleged negligence in the present action was not the omission of a police officer or member of the police force assuming to act as such but was done by an employee of the city engaged in the maintenance of a police station, the rule which denies the application of the doctrine of *respondeat superior* to the torts or negligent acts of police officers does not apply.    This proposition simply brings us back to the question whether the safe and proper maintenance of a police station building is not an appropriate, not to say necessary, element in the maintenance of a police force; and if it is, whether it is not the exercise of a public governmental function.    I have already indicated that I think these questions must be answered in the affirmative.    The evidence leaves no doubt as to the character of this building.    The city engineer, who had been in office several years, and was its custodian, testified : " Since I have had charge of it, it has been occupied as headquarters for the police department and by the police court — nothing else.    There are four stories in the building.    The police telephone system is on the top story — police patrol and fire alarm.    There is a portion of the fire alarm there and the police patrol calls.    The third is the women's cells and matron's room.    The second floor is the men's cells and the court room.    The first floor is the assembly hall and the office of the captain and some other officers.    The assembly hall is where the policemen assemble and are given their instructions. That is the use to which the building has been put during all the time I have been city engineer, and to no other purpose."

It thus appears that the structure was used in part as a jail for prisoners, as well as in part for the accommodation of the police force of the city of Rochester.    The weight of judicial

authority in this country is in favor of the doctrine that the maintenance of a jail is a governmental function (*Lahner* v. *Town of Williams*, 112 Iowa, 428; *Gray* v. *Mayor, etc., of Griffin*, 111 Ga. 361; *Le Clef* v. *City of Concordia*, 41 Kans. 323; *City of New Kiowa* v. *Craven*, 46 Kans. 114; *Gullikson* v. *McDonald*, 62 Minn. 278; *Brown* v. *Town of Guyandotte*, 34 W. Va. 299); although a contrary view has been entertained in North Carolina (*Shields* v. *Town of Durham*, 118 N. C. 450) and by a Federal judge in the fourth circuit (*Edwards* v. *Town of Pocahontas*, 47 Fed. Rep. 268). I think that the prevailing view is based on sound reason, and that it is equally applicable to a police station, such as this was in Rochester. It was actually applied to a police station in the case of *Kelley* v. *Cook* (21 R. I. 29), where the defendant, city treasurer, was sued as the representative of the city of Woonsocket to recover damages for the negligence of the city in caring for a person who had been unlawfully arrested by a police officer and incarcerated in a police station, and by reason of the city's neglect to provide for him therein, was rendered so ill that he died. The court said: "In the temporary care of persons under arrest the city by its police department is aiding in the enforcement of the laws and thus discharging a public duty for which it receives no pecuniary benefit, and for the manner in which it discharges this duty it is legally responsible to no one. The police regulations of a city are not made and enforced in the interest of the city in its corporate capacity but in the interest of the people."

I cannot see that any distinction can logically be drawn which will take this case out of the rule which defeated the plaintiff in *Maxmilian* v. *Mayor* (*supra*), growing out of the fact that the person or persons whose alleged negligence caused the accident here were not at the time actually endeavoring to exercise any authority over the plaintiff, or with reference to the plaintiff, *as officers or members of the police force*. If their acts were in aid of the maintenance of the police station, and such maintenance by the municipality was as much the exercise of a public governmental function

10

as was the organization or the regulation or the discipline of the police force itself, then the non-liability of the city depends on the character of the duties thus imposed and assumed, and not at all on the relation to the municipality of those affected by the manner in which such duties may be discharged.

The point is made by the learned counsel for the respondent that the principal question which I have discussed was not raised by the answer. It is a purely legal objection to the plaintiff's right to recover which it was not necessary to plead. The evidence as to the character of the building came in without objection and was uncontroverted. The point was distinctly raised on the defendant's motion to dismiss, and the ground on which Mr. Justice Nash based his dissent in the court below shows that it must have been considered by the Appellate Division.

I think that the judgment should be reversed and a new trial granted, costs to abide the event.

Haight, J. (dissenting). This action was brought to recover damages which the plaintiff is alleged to have sustained by reason of his falling down the elevator shaft in the police building in the city of Rochester.

It appears that one Smith was in the employ of the city, operating the elevator; that he ran it down to the ground floor, then stepped out and went to the front door of the building to notify the engineer that the elevator squeaked and needed oiling; he there met the plaintiff and one Murrell who were engaged in repairing the roof of the building and walked back with them; the plaintiff, being in the lead, stepped inside of the elevator shaft and fell to the cellar floor, receiving the injuries for which this action was brought. It appears that during the absence of Smith, one Karnes, another employee, a telegraph operator, arrived, entered the elevator and, as he states, nearly closed the door, leaving a space of about two inches, and then ran the elevator up to one of the floors above.

The controversy in this case is as to whether the door of the elevator shaft was open or closed. The testimony of the

plaintiff and his companion Murrell is to the effect that the door was wide open. All the witnesses on the part of the defendant testify to the effect that it was partially or nearly closed. The trial court charged, as a matter of law, that if the jury found that the door was substantially closed, and that the plaintiff pushed it open and stepped into the well without looking to see whether the car was there, that he was negligent and could not recover. But if the door was open, then it was a question for the jury to determine from the evidence as to whether he used such care and caution as a reasonably prudent and cautious person would have used under the same circumstances in entering or attempting to enter the elevator well, without looking to determine whether the car was there or not. The jury having found a verdict in favor of the plaintiff, we must assume that it found that the door of the elevator shaft was open, and that that issue is disposed of in favor of the plaintiff. The negligence of the defendant's employee thus being established, the only other question that remains is as to whether the plaintiff was guilty of contributory negligence. That question was also submitted to the jury, and the finding was in his favor. I am of the opinion that, under the circumstances disclosed by his testimony and that of his associate, we cannot say as a matter of law that he was guilty of contributory negligence, or that there was no evidence to sustain the verdict. (*Tousey* v. *Roberts*, 114 N. Y. 312, 316.)

It is now contended that the city of Rochester in maintaining and operating an elevator in the police building was engaged solely in the discharge of a public governmental function, distinguishable from a municipal function, and that, therefore, it is not liable for the negligence of its servants. The duties of policemen, as prescribed by statute, pertain to the executive branch of the government, and the fact that the statute has provided for their appointment by municipal officers does not change the character of their duties, or operate to make the municipality liable for their negligence while engaged in the discharge of such govern-

mental function. It, consequently, follows that when a policeman in an endeavor to shoot a mad dog negligently injures an individual, the municipality is not liable. (*McKay* v. *City of Buffalo*, 9 Hun, 401; affirmed, 74 N. Y. 619.) The same rule obtains with reference to the board of health. The preservation of the health of the people of the state and their protection from infectious and contagious diseases is a governmental function, and although the legislature has provided for the establishing of local boards through appointment of municipal authorities, the servants or employees when actually engaged in the discharge of a duty pertaining to the preservation of such health, the municipality is not liable for their negligence or want of skill in the performance of that duty. Consequently, when an employee engaged in the driving of an ambulance wagon negligently struck and caused the death of a person, the city was held not liable. (*Maxmilian* v. *Mayor, etc., of N. Y.*, 62 N. Y. 160.) It will thus be seen that the liability of the municipality depends upon the character of the service in which the servant is engaged. This question was considered in the case of *Woodhull* v. *Mayor, etc., of N. Y.* (76 Hun, 390). In that case an action had been brought against the city of New York and the city of Brooklyn, and it was conceded that the defendants owned and were operating a railway across the New York and Brooklyn bridge and were engaged in carrying passengers for hire. It was the contention of the plaintiff that he had paid his fare to be carried across the bridge, and while in the act of entering one of the cars a policeman, who was there engaged in performing the ordinary duties of a guard, closed the door against his leg, and that he remonstrated against such treatment. Thereupon the policeman entered the car, prevented the plaintiff from leaving it until it arrived at the other end of the bridge, and then arrested him, charged him with assault and battery, and took him before a magistrate, before whom he was tried upon the charge and acquitted. An action for false imprisonment was then brought and a recovery had, which was sustained in the General Term upon the ground

that the policeman was stationed at the door as a trainman or guard, assisting passengers in or out of the cars; that such a service pertained to the municipality and was not governmental.   An appeal was taken to this court and the judgment reversed, but upon the ground that the action was for false imprisonment and not for injuries received by reason of the shutting of the door against the plaintiff's leg.   It appeared that the policeman had been a patrolman upon the bridge ten years, charged with the duty of preserving order, and that in making the arrest he was acting in his capacity as such policeman discharging a governmental function, for which the municipality was not liable for his negligence or misconduct; that his act in shutting the door was a separate and distinct act from that of subsequently arresting the plaintiff without proper cause.   (150 N. Y. 450.)

Bearing in mind the distinction, to which attention has been called, we come to the consideration of the circumstances of this case.   No claim is made that the elevator was out of repair, or that there was any defect which caused the injury to the plaintiff. The negligence, if any, was the negligence of the employee in leaving the door open when he removed the elevator to an upper floor.   Was this employee discharging a governmental function?   I think not.   Undoubtedly the elevator was a convenience.   It enabled the policemen to ride up and down.   So were the cars running upon the New York and Brooklyn bridge a convenience.   Policemen could avail themselves of them in going from one place to the other, as well as other street railroads, by which they could ride from their homes to the station house or to the territory which they were required to patrol and guard.   But it never before has been suggested that the servants of a municipality or of a corporation, in aiding a policeman in his travels, are exercising a governmental function which would shield it from liability for the negligence of its employees.   To carry the rule thus far might, as was suggested in the *Woodhull* case, permit cities to escape all liability for injuries by reason of the negligence of their servants by appointing them all policemen.   We then answered

that contention, to the effect that such could not be the case, " for it is very easy to distinguish between the duties of a servant and those of a policeman." It does not appear that the operator was a policeman, nor that he had any other duty to perform which pertained to a governmental function. He was employed and paid by the city, and to my mind he was rendering purely a municipal service and was not discharging the functions of a governmental officer.

It is also suggested that a room for the detention of prisoners was maintained in the police building, and that the maintaining of a jail or prison is a governmental function. It may be that the keeper of the room of detention is discharging a governmental function, but that question is not involved in this case and should not, therefore, now be decided.

The judgment should be affirmed, with costs.

EDWARD T. BARTLETT and HISCOCK, JJ., concur with WILLARD BARTLETT, J.; GRAY, J., concurs on second ground stated in opinion, and CULLEN, Ch. J., and WERNER, J., concur in result on the ground only of contributory negligence of the plaintiff; HAIGHT, J., reads dissenting opinion.

Judgment reversed, etc.