CHARLES H. MURPHY, Plaintiff, v. THE INCORPORATED VILLAGE OF FARMINGDALE, Defendant.

JOHN J. MURPHY, Plaintiff, v. THE INCORPORATED VILLAGE OF FARMINGDALE, Defendant.

County Court, Nassau County, June 1, 1937.

*Arthur N. Sager*, for the plaintiffs.

*David Holman*, for the defendant.

JOHNSON, J. Motions are made by the defendant in these actions to dismiss the complaints for insufficiency. The actions are to recover damages for injuries claimed to have occurred to the plaintiffs as a result of the collision of an automobile in which they were riding with a traffic control signal located at the intersection of two public highways within the defendant village. The complaints allege in substance that the defendant is a municipal corporation organized and existing under the Village Law; that it caused a traffic control signal to be erected supported by a stanchion set upon a concrete base at the intersection of Main and Fulton streets, in the village, " for the control and regulation of traffic on said highways and thoroughfares and the use thereof by the public, at and near said intersection;" that thereafter the defendant, its officers, agents and servants, maintained, operated and controlled such traffic control signal; that it was negligent in so doing in that it permitted such signal to be improperly and insufficiently lighted, and in that it neglected to give other notice or warning of its existence, particularly in the night time, so that it constituted a danger and menace to traffic and to users of the highways. Summarized, therefore, the charge in the complaints is that the village was negligent in placing what is commonly known as a " silent policeman " in the middle of the intersection of two public highways without provision to light the same or give warning of its existence in the night time so that users of the highways could see it and avoid collision with it.

The defendant's attack upon the complaints rests upon its contention that the erection and maintenance of the signal device was a police matter in which the village was acting in a governmental capacity in the performance of a governmental function, and that consequently the rule of non-liability is applicable.

The courts have often held that a municipal corporation possesses two kinds of powers: (1) Powers that are governmental and public, which are given and used for public purposes and with respect to which the municipal corporation is in the position of a sovereign; and (2) powers that are proprietary or private, to be used for private purposes with respect to which the municipal corporation is in the position of a legal individual. When it is exercising the first classification of powers it is acting as a municipal government; when it is exercising the second of such classified powers it is acting as a corporate, legal individual. (*Lloyd* v. *City of New York*, 5 N. Y. 369.)

In cases involving the determination of the capacity in which the municipal corporation is acting, where rights of third parties seeking recovery for injuries suffered through negligent acts of agents of the municipal corporation are not concerned, the courts have not experienced great difficulty in determining when the municipal corporation is acting as such in the performance of a governmental function. Indeed, in this State the courts have shown a tendency to hold such functions to be governmental, when they involve particularly the public health.

The question, for example, has arisen in connection with the validity of State legislation under the so-called " Home Rule Amendment," authorizing cities to legislate with reference to " property, affairs or government of cities." Thus, the Rapid Transit Act was held to have been adopted, not for the benefit only of the cities affected thereby, but for the public at large. (*Admiral Realty Co.* v. *City of New York*, 206 N. Y. 110.) It was similarly held as to the Public Service Commission Law. (*Matter of McAneny* v. *Board of Estimate & Apportionment*, 232 N. Y. 377.)

The theory or principle underlying these decisions is that the police power of the State, in so far as it deals with the health of the people of the State, including those in its cities, is always considered a State affair in which the people of the State as a whole are interested, rather than a local affair for the cities only. Upon this principle the so-called " Multiple Dwelling Law " was sustained (*Adler* v. *Deegan*, 251 N. Y. 467), as well as the Buffalo Sewer Act (*Robertson* v. *Zimmermann*, 268 id. 52), the Albany County Power Authority Act (*Gaynor* v. *Marohn*, Id. 417) and the new State Housing Act (*Matter of New York City Housing Authority* v. *Muller*, 270 id. 333). In those cases it was held that the municipality or authority created by the Legislature to which the power was delegated was acting as an agency of the State to carry out a State function which affected the health, safety and welfare of the people of the State.

Thus, too, it was held that the matter of water supply is a matter of State-wide concern over which the Legislature has full control

(*Matter of Suffolk County* v. *Water Power & Control Commission*, 269 N. Y. 158); and most recently the Supreme Court of the United States has similarly held with reference to the water department of the city of New York, ruling that a salaried engineer in that department was not subject to Federal income tax upon his salary because he was engaged in the exercise of an essential governmental function. (*Brush* v. *Commissioner of Internal Revenue*, 300 U. S. 352; 57 S. Ct. 495.)

The decisions last referred to show clearly that the difficulties have arisen in determining this question when it was sought to hold the municipality liable in tort for the negligent acts of its agents. It is unnecessary at this time to investigate that question at length as it has been so extensively treated by the courts and by the text writers. (See, for example, *Brush* v. *Commissioner of Internal Revenue, supra; Augustine* v. *Town of Brant*, 249 N. Y. 198; *Matter of Evans* v. *Berry*, 262 id. 61, and articles therein referred to [p. 71], reported also in 89 A. L. R. 387, with annotation beginning at p. 394.)

The article of Prof. Borchard (34 Yale L. J. pp. 1–45, 129–143, 229–258), "Government Liability in Tort," covers the subject thoroughly and has frequently been referred to by the courts.

The statement of Prof. Borchard in that article, and the statement of the United States Supreme Court in *Brush* v. *Commissioner of Internal Revenue* (*supra*), are to the effect that there is probably no topic of law in which the decisions of the State courts are in greater conflict or confusion than that of the difference between governmental and proprietary functions of a municipal corporation when considered in actions against that corporation in tort for the negligence of its agents and that it is impossible to extract any definite rule from the decisions, as in such cases the rule of liability has often been applied to prevent injustice in the individual case presented. Thus it had been established in this State that from the standpoint of liability to one suffering personal injuries as a result of the negligent acts of its agents, a municipal corporation in supplying water was acting in a proprietary, rather than in a governmental capacity; whereas, it may be seen from the more recent decisions cited above that the supplying of water is generally considered an essential State or governmental function over which the State should have and has complete control for the benefit of the health of all the people of the State. As was pointed out by the Supreme Court of the United States in the *Brush Case* (*supra*), the question of whether or not such liability shall be imposed is a question for each State or municipality to determine for itself as a matter of local policy. Clearly what the courts have been doing is

by extension to hold the municipality liable in tort for the negligence of its agents even though the function be one which the courts would otherwise denominate as governmental. The result, of course, has been unfortunate in that the various reasons assigned by the various courts to sustain such liability, when carefully scrutinized, do not meet the test of the established rule.

It has not been difficult to state the rule. It was well stated by the Court of Appeals in *Lloyd* v. *City of New York (supra)*. The difficulty has been in the application of the rule and even in that case and at that early period the Court of Appeals came to the conclusion that on the question of tort liability of a municipality there was no general rule for the guidance of the courts and that " all that can be done with probable safety is, to determine, as each case arises, under which class it falls." (*Lloyd* v. *City of New York*, 5 N. Y. at p. 375.) And, quite recently, the same Court of Appeals found the same difficulty in the proper application of the test and found the same conflict of authorities. (*Augustine* v. *Town of Brant*, 249 N. Y. 203, 204.)

As to one function, however, the courts of this State and of the other States generally have been in accord. As Prof. Borchard said, with respect to the exercise of the police function, " there is an unusual degree of unanimity against municipal liability " (p. 240), and such exemption from liability " extending to the most wilful, negligent or illegal acts of police officers " (p. 241). The reason usually given by the courts for such exemption is " that their duties are prescribed by general law, that they act for the benefit of the public at large and not for the city and its inhabitants, and that, though appointed, paid and discharged by the city authorities, they are not agents of the city but of the State, for which the city is acting by delegation in carrying on police functions, and that therefore the doctrine of *respondeat superior* does not apply " (p. 240).

The reason was stated by the New York Court of Appeals as follows: "At common law cities were not liable for the torts of police officers. Although appointed and paid by the city, such officers were not regarded as municipal agents or servants. When acting in the course of their duty, they were said to be performing a governmental function. The city was immune from liability because the doctrine of *respondeat superior* was held to be inapplicable. This was a rudimentary survival of the maxim ' The King can do no wrong.' (*Maxmilian* v. *Mayor*, 62 N. Y. 160, 164; *Augustine* v. *Town of Brant*, 249 N. Y. 198, 204.) In Ohio the courts changed the common-law rule so as to impose liability on

the city for the wrongful acts of its policemen and firemen in *Fowler* v. *City of Cleveland* (100 Ohio St. 158) only to restore it in *Aldrich* v. *City of Youngstown* (106 Ohio St. 342)." (*Matter of Evans* v. *Berry*, 262 N. Y. at pp. 67, 68.)

Unquestionably in this State it has been recognized that the modern tendency is against the rule of non-liability of municipalities. It is doubtless because of that tendency that the courts have so often avoided the application of the common-law rule of non-liability. In addition thereto in this State the Legislature has recognized the tendency and early applied the rule of liability for defective highways to cities and villages, later to towns (Highway Law, § 215, formerly § 74) and in a limited degree to the State itself (Highway Law, § 58), as well as more general liability on the part of the State for the acts of its agents (Court of Claims Act, § 12-a).

That tendency should be equally applicable to the acts of firemen and policemen and has been so recognized. (*Matter of Evans* v. *Berry, supra*, pp. 70, 71.) However, the courts have been quite uniform in refraining from a further extension of the rule of liability in the case of exercise of the police function, properly, no doubt, leaving such extension to the Legislature as the proper body to determine local or State policy in that respect. Thus far, however, the Legislature has seen fit to establish the rule of liability for the acts of police only in a limited degree in connection with the operation of vehicles on public highways. (Former Highway Law, § 282-g, and Vehicle and Traffic Law, § 59; General Municipal Law, §§ 50-a, 50-b and 50-c.) The Legislature having thus limited the extension of the rule of liability, it is no function of the courts to extend it beyond the limits fixed by the Legislature.

We reach then the question whether the erection and maintenance of the traffic control standard in this case was a police function in which the village defendant was acting as an agent of the State in the performance of a governmental function. A village is empowered by the Legislature to regulate the use of its streets by motor vehicles (Village Law, § 89, subds. 44 and 59; § 90); it also has legislative authorization to enact ordinances under certain conditions for the regulation of traffic under the Vehicle and Traffic Law (§§ 86, 90). It has been held by this court that under those provisions a village is authorized to provide and maintain traffic signals (*People* v. *Wolf*, 153 Misc. 230). A village is likewise authorized to establish and maintain police and a police department (Village Law, art. 7).

Traffic control signals are recognized, permitted and authorized by statute. They are defined, and the meaning of the colors is

likewise defined. (Vehicle and Traffic Law, § 2, subd. 24; §§ 84, 85 and 86; § 88, subds. 1, 6 and 9.)

Unquestionably under the statutes the defendant village was invested with power and authority to establish and maintain a traffic control signal at the intersection of the two streets in question in this case, prescribe rules and regulations with respect to traffic at such intersection and provide police upon whom was imposed the duty of enforcing the provisions of the statute. (Vehicle and Traffic Law, § 89.) Among other provisions relating to traffic at such an intersection are many to be found in the Vehicle and Traffic Law (§ 67; § 82, subd. 4; § 81, subds. 10 and 21).

In exercising such function it has been most recently held that the municipality was acting in the performance of a police power as an agent of the State and thus performing a governmental function. (*Cleveland* v. *Town of Lancaster*, 239 App. Div. 263; affd., without opinion, 264 N. Y. 568; *Parsons* v. *City of New York*, 248 App. Div. 825 [2d Dept.]; affd., without opinion, 273 N. Y. 547.)

The opinion of the Appellate Division in *Cleveland* v. *Town of Lancaster* (*supra*) is particularly illuminating upon the question here presented. Under the former Town Law, a town was authorized by the statute to install and maintain traffic standards and it did so for the purpose of regulating traffic at intersections for the convenience and safety of the public. The maintenance of such traffic signals was under the jurisdiction of its police department. The erection of such traffic signal, said the court, was an appropriate exercise of the power of the town board to enact ordinances, rules and regulations relating to peace and good order generally. " It was in effect an exercise of the police power, the substituting of a signal for a policeman " (p. 265). The court further held that, under the provisions of the statutes above referred to, the power to erect and maintain traffic signals was vested not in the town superintendent of highways but in the town itself. The question presented, therefore, was whether the town would be liable in tort for negligence of its agents in such maintenance in the absence of a statutory declaration of such liability. It pointed out the former distinction between towns and counties on the one hand, and incorporated cities and villages on the other, with respect to liability for the acts of the persons exercising the powers conferred and proceeded upon the assumption that such distinction has now been largely wiped out, and that the same rule now applies to towns as to cities and villages. The court then said (p. 269): " If it be assumed that the rule applies, the test now seems to be whether there has been imposed or conferred upon a town a public

or governmental duty, as opposed to a mere quasi-private or proprietary duty. If the former, the town acts as agent of the State for the benefit of the people of the State at large and the rule of non-liability for negligence is applied. If the latter, the town is liable to the same extent as any individual or private corporation would be liable. (*Augustine Case*, 249 N. Y. *supra*, 203, 204.) " Then came the application of those principles to the facts of the case presented, and holding that the function being a police and governmental function and that the rule of non-liability, therefore, was still applicable, the court said (at pp. 269 and 270): " Moreover, while perhaps it cannot be said that the establishment of the signal was a public duty imposed upon the town, nevertheless any duty which came into existence the moment the town availed itself of the permission granted by section 138-d of the Town Law was a duty to the public of the State generally, not just to the people of the locality. Nor can it be fairly said that the towns here were acting as an individual would act, ' voluntarily assuming a duty, not imposed upon it, for the benefit of a locality rather than the general public.' (*Augustine Case*, *supra*, 206.) The towns were not performing ' mere quasi-private duties for the peculiar advantage of the municipality.' (Id. p. 203.) The signal was established and maintained pursuant to ' a lawful power which was vested in [the towns] by the legislative body for the public convenience and welfare and not for any private benefit of the corporate body.' (*Markey* v. *County of Queens*, 154 N. Y. at p. 687, quoted by POUND, J., in *Augustine* v. *Town of Brant*, *supra*, 205.) It follows, therefore, that if the towns in installing and maintaining the signal under section 138-d of the Town Law were obligated further than hereinbefore indicated, they were exercising governmental functions as agents of the State and hence are not liable. (*Wilcox* v. *City of Rochester*, 190 N. Y. 137.) The princip e stated in *Herman* v. *Board of Education* (234 N. Y. 196) cannot apply for the same reason. Whether the maintenance of the standard was a highway or a police function, it seems clear that it was governmental in its nature. And inasmuch as the State had not imposed upon the towns the duty, or conferred upon them the right, to take over the care and maintenance of these highways, and, collaterally, this signal light, it cannot be said that there was any grant, acceptance or exercise of such power by the towns. The acts of the Cheektowaga police were done in the attempted performance of a duty laid by law upon them and not upon the municipality. (*Maxmilian* v. *Mayor*, 62 N. Y. 160, 164; Vehicle & Traffic Law, § 91.) They acted, not as agents of the municipalities but of the State (*Wilcox* v. *City of Rochester*, 190 N. Y. 137); and for any negligence on their part while thus acting the towns are not liable."

It is impossible to escape the conclusion that under that decision the erection and maintenance of the traffic control signal in the case at bar was the exercise by the village of a police and governmental function for the benefit of the general public, rather than a proprietary or private function for the local benefit of the village only. And when that decision is considered in connection with those in which the courts passed upon the question of municipal liability for negligence on the part of the police in performance of police duties it seems perfectly clear that the extension of the rule of liability has been definitely limited by the Legislature.

The enactment by the Legislature of former section 282-e of the Highway Law (now Vehicle and Traffic Law, § 59) imposed liability upon every owner of a motor vehicle operated upon a public highway for death or injuries resulting from negligence in its operation " in the business of such owner or otherwise, by any person legally using or operating the same with the permission, express or implied, of such owner." It was urged that this section imposed liability upon a municipality for the negligent operation of a municipally owned motor vehicle by a police officer of the municipality; but the court held that the section did not apply to municipalities when acting as agencies of the State. (*Lacock* v. *City of Schenectady*, 224 App. Div. 512; affd., without opinion, 251 N. Y. 575.) In that case the Appellate Division first pointed out that a police officer while engaged in his duties as such was, under the well-settled authorities, performing a governmental function, and that the municipality was not liable for his negligence. That court said (p. 514): " The officers of the city are made instruments of the State for the organization of the police force. The power of appointment is exercised within the broad field of the police power of the State and an officer of the municipality in so appointing acts as a public officer in the discharge of duties imposed upon him, not by the city in its private character, but by the Legislature for the public benefit. (*Wilcox* v. *City of Rochester*, 190 N. Y. 137, 142.) In that case (p. 144) Judge WILLARD BARTLETT, writing for the court, said: ' I think it can hardly be disputed that, so far as relates to the appointment and maintenance of the police force, the city of Rochester exercises a public governmental function.' (Rochester was at that time a city of the second class.) The fact that the city pays the policeman does not change the rule of immunity from action; this is but a means that the State employs of maintaining the force. The acts of the city or of the appointing officer being acts of a governmental agency, that agency enjoys the same immunity from action which the State has (*Corbett* v. *St. Vincent's Industrial School*, 177 N. Y. 16, 21), and so is immune from action

by any person on account of its own acts or of the acts of any one of its officers, though a valid cause of action may exist, unless express consent thereto has been given. (*Jaked* v. *Board of Education,* 198 App. Div. 113, 116, and cases cited; affd., 234 N. Y. 591.) The Legislature has given no consent to the prosecution of an action against the city on grounds alleged here. If the rule urged were adopted, this immunity would gradually disappear. We hold that this action may not be maintained though the commissioner of public safety may have failed to exercise reasonable care in the selection of Nessler." And in holding that this rule of non-liability had not been changed by the enactment of former Highway Law, section 282-e, the court said (p. 515): " In our opinion this provision does not apply to municipalities when acting as agencies of the State. We have shown above the nature and extent of the immunity from action had by a city because of its acts or the acts of its officers performed while acting as a State agency in organizing and controlling a police force. An immunity so grounded admits of no exception other than that which the Legislature has enacted; it is not taken away by legislation not specific in its meaning. (*Matter of Hoople,* 179 N. Y. 308, 311.) While the State may give its consent to be prosecuted by action, a general statute, by implication, does not give the required consent. Such consent must be expressed in unequivocal language. Consent to the prosecution of a city for its acts or omissions when, as the agency of the State, exercising general governmental powers conferred upon it, must be expressed with like language. I do not find such language in this act."

Following this decision, the Legislature enacted former section 282-g of the Highway Law, subsequently section 50-a of the General Municipal Law, and sections 50-b and 50-c of the General Municipal Law, thereby placing liability upon certain municipalities for the negligent acts of their policemen and firemen, but confining and limiting such liability of negligence to the operation of vehicles on public highways. Beyond that the rule of immunity still applies for it admits of no exception other than that which the Legislature enacts and the immunity is not taken away except by language which is unequivocal and specific in its meaning. (*Lacock* v. *City of Schenectady, supra,* p. 515.) Surely the recent legislation referred to by which the Legislature has limited the exception to the rule of immunity cannot by implication be extended beyond its clear and unequivocal language.

*Parsons* v. *City of New York* (248 App. Div. 825) involved a situation quite similar to that presented in *Cleveland* v. *Town of Lancaster* (239 App. Div. 263). The Appellate Division in the Second Department held by a divided court that the rule of non-liability applied. It was affirmed unanimously, without opinion,

by the Court of Appeals. In the majority opinion the Appellate Division said: " Signal lights are an incidental part of traffic regulation. The allegation of the complaint, admitted by failure to deny in the answer, that the city maintained the light involved in this action necessarily means maintained through the police. Regulation of traffic, and, therefore, the proper maintenance of signal lights used in that connection, is the performance of a governmental duty for neglect of the police in the exercise of which the city is not liable. This is quite different from the duty involved in the maintenance of city highways, which is the performance of a proprietary duty. (*Auslander* v. *St. Louis*, 332 Mo. 145; 56 S. W. [2d] 778; *Dorminey* v. *City of Montgomery*, [Ala.] 166 So. 689; *Cleveland* v. *Town of Lancaster*, 239 App. Div. 263.) "

In both the *Cleveland* and *Parsons Cases* (*supra*) the traffic signal involved was an overhead traffic light, and it is urged that a traffic signal placed in the highway itself is something entirely different so as to make those decisions inapplicable to the situation in the instant case. I am unable to see any fundamental distinction which would make necessary the classification of the one as a governmental function, and the other as a proprietary function. In both cases the municipality is exercising a police power in the performance of a duty enjoined by the Legislature upon the municipality as a police function. The municipality, therefore, is necessarily acting as an agency of the State in the performance of a governmental function essential for the public safety generally. It cannot be disputed that in performance of this function the municipality may make use of traffic signals and traffic control apparatus, as well as policemen. That is recognized and authorized by the statutes and has been done for years. If the function is a governmental one, it would seem to be a matter of indifference on the question of liability whether the traffic control devices are situated upon, above or beside the highway. I am in accord with the dissenting memorandum in the *Parsons Case* (*supra*) of the Appellate Division in that respect. That dissent was based upon the theory that the city was not under a mandatory duty to install or maintain the traffic signal and having seen fit to install it, it, therefore, became its duty to maintain it, and said: " We can see no reasonable distinction between danger arising from improper use of a signal light hanging above the surface of the street, inviting users of the street unto a dangerous position, and a condition arising from a dangerous condition in the street itself." It seems to me that there is no such distinction and that in either case there may be danger to users of the highway if the signal device is improperly maintained. Indeed it is clear from the complaints in the instant case that that is the ground upon which the plaintiffs seek to establish liability.

Even if the complaints did not so allege, an allegation that the signal was maintained by the village would necessarily mean that it was maintained through the police. (*Parsons* v. *City of New York, supra.*) Hence, the complaints in this case must be taken to allege that the device was maintained by the village through its police for the control and regulation of traffic on the highways in question, and the use thereof by the public generally; and that the negligence consisted of failure to maintain the same with proper and sufficient lighting or other provisions to give notice or warning to users of the highway of its presence and location after dark.

I am, therefore, constrained to hold that, under the decisions, and particularly those last cited, the defendant village in the maintenance of the device in question was exercising a police or governmental function as an agency of the State, and that the rule of non-liability applies.

The motions must, therefore, be granted.