Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of CORNELIUS RYAN, Respondent, for Compensation under the Workmen's Compensation Law, *v.* THE CITY OF NEW YORK, Employer and Self-Insurer, Appellant.

Third Department, September 18, 1919.

**Workmen's Compensation Law — liability of municipal corporations thereunder — patrolman assigned to look after electric lighting system in station house is an " employee."**

It was the intention of the Legislature in the enactment of the Workmen's Compensation Law and the amendments thereto, to impose upon munic-, ipal corporations liability thereunder for accidental injuries sustained by persons employed by them, who have been detailed by their superiors to perform work designated as one of the hazardous employments, to the same extent that an individual employer is liable.

A patrolman of the city of New York having been detailed by his superior officer to care for and maintain a station house and to look after the installation or repair of the electric lighting system, is an " employee " within the meaning of the Workmen's Compensation Law, and is entitled to an award thereunder for injuries sustained by falling while removing a bulb from an electric fixture in the ceiling of aid station house.

H. T. KELLOGG and COCHRANE, JJ., dissented, with opinion.

APPEAL by the defendant, The City of New York, from an award of the State Industrial Commission, entered in the office of said Commission on or about the 15th day of November, 1918.

*William P. Burr, Corporation Counsel [Terence Farley, William E. C. Mayer* and *Isaac F. Cohen,* of counsel], for the appellant.

*Charles D. Newton, Attorney-General [E. C. Aiken, Deputy Attorney-General,* of counsel], for the respondent.

LYON, J.:

The question presented by this appeal is whether this claim comes within the provisions of the Workmen's Compensation Law.

The claimant was a patrolman of the city of New York. He was injured June 11, 1918, by falling from a box to the concrete cellar floor while removing a bulb from the electrical fixture in the ceiling of the station house. His right wrist and shoulder were sprained. He was removed to the Fordham Hospital and there confined from June nineteenth to July sixth. He was assigned as attendant October 16, 1917. His duties were to care for the prisoners who were brought to the Thirty-seventh precinct station house, and to take charge of the lower floor, clean the walls and the floor, and fix the electric lights. He worked seven days of the week. An award was made him by the Commission for three weeks and four days at fifteen dollars per week. From such award the city appeals.

Section 2 specifies what are hazardous employments and subdivides them into groups. Group 42 provides that the maintenance and ·care of buildings, sanitary lighting or heating installation or repair, are hazardous employments. Group 43 provides that any employment enumerated in the foregoing groups and carried on by the State or a municipal corporation or. other subdivision thereof, notwithstanding the definition of the term " employment " in subdivision 5 of section 3 of this chapter, is a hazardous employment. It may be noted as bearing upon the intention of the Legislature as to the construction to be given to the act, that group 44 provides, " employment as a keeper, guard * * * or orderly in a prison, reformatory * * * maintained or operated by the State or municipal corporation or other subdivision thereof, notwithstanding the definitions of . the terms ' employment,' ' employer ' or ' employee ' in subdivision five of section three of this chapter," is a hazardous employment.

By section 3, subdivisions 3 and 4, the word " employer " includes the State and a municipal corporation, or other political subdivision thereof, employing workmen in hazardous employments; and the term " employee " means a person engaged in one of the occupations enumerated in section 2. Having been detailed by his superior officer to care for and maintain the station house, and to look after the installation or repair of the electric lighting system, he comes within the definition of an employee under the law. He has not received any pay

for his time while laid up from his injury, although he had made application therefor. Had he received pay, and that fact have been interposed as a defense, it would be proper for us to inquire what effect, if any, it had upon his right to receive compensation. We think it was the intention of the Legislature in the enactment of the Workmen's Compensation Law, and the amendments thereto, to impose upon municipal corporations liability thereunder for accidental injuries sustained by persons employed by them, who have been detailed by their superiors to perform work designated as one of the hazardous employments, to the same extent that an individual employer is liable.

The award should be affirmed.

All concurred, except H. T. KELLOGG, J., dissenting with an opinion in which COCHRANE, J., concurred.

H. T. KELLOGG, J. (dissenting):

No other person than an employer is required to pay or provide compensation to an injured employee. Consequently, even though the claimant at the time of his injury was engaged in a hazardous occupation, he could have no compensation at the hands of the city of New York, unless that city was his employer. If a police officer, or other officer of a city or State, is guilty of negligence in the performance of governmental duties, no liability attaches to the city or State. The reason is that the police or other officer is not the employee of a city or a State regarded as corporations, but is rather the representative of the unorganized public, a part of the sovereign power of which he is engaged in exercising. Indeed he is not in the ordinary sense either an employee or an agent of any person or body, except as all public officers are the servants of the public. This theory is so thoroughly exposed in the leading case of *Maxmilian* v. *Mayor* (62 N. Y. 160) that it seems unnecessary to enlarge upon the subject further than to make therefrom the following quotation: " Where the duties which are imposed upon municipalities are of the latter class [governmental] they are generally to be performed by officers who, though deriving their appointment from the corporation itself, through the nomination of some of its executive agents, by a power devolved

thereon as a convenient mode of exercising a function of government, are yet the officers, and hence the servants, of *the public at large*. They have powers and perform duties for the benefit of all the citizens, and are not under the control of the municipality which has no benefit in its corporate capacity from the performance thereof. *They are not then the agents or servants of the municipal corporation*, but are public officers, agents or servants of the public at large, and the corporation is not responsible for their acts or omissions, nor for the acts or omissions of the subordinates by them appointed. (*Fisher* v. *Boston*, 104 Mass. 87.) And where a municipal corporation elects or appoints an officer, in obedience to an act of the Legislature, to perform a public service, in which the corporation has no private interest and from which it derives no special benefit or advantage in its corporate capacity, *such officer cannot be regarded as a servant or agent of the municipality*, for whose negligence or want of skill it can be held liable." The claimant was a police officer of the city of New York, who at the time of the accident was acting as an attendant at a police station in that city. It was his duty to take care of the prisoners, to clean the walls and floors of the station house, and to repair the electric lights therein. The maintenance and care of a police station is an exclusively governmental function, so that every branch of the work which the claimant was called upon to perform was of a strictly governmental character. (*Wilcox* v. *City of Rochester*, 190 N. Y. 137.) In that case the court, writing through WILLARD BARTLETT, J., said: " The question which confronts us, on the branch of this appeal now under consideration, is whether the duty exercised by the city of Rochester, under the general statutes relating to cities of the second class, of maintaining and caring for a police station, is a governmental duty appertaining to the general administration of the State or a duty imposed and undertaken for the benefit of the municipality as a corporate body." The court then proceeded to answer in the affirmative the first question thus propounded. It follows, under the authorities cited, that the relationship of master and servant did not exist between the city of New York and the claimant; that the latter was not in the employ of the former; therefore, that

an award of compensation against the appellant in favor of the respondent should not have been made.

I favor a reversal of the award and a dismissal of the claim.

COCHRANE, J., concurred.

Award affirmed.